# Hillsdale Coal & Coke Company *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Common carriers—Illegal discrimination—Furnishing cars—Measure of damages—Instruction.*

1. In an action by a coal company against a railroad to recover damages for alleged illegal discrimination in furnishing transportation facilities, an instruction to the jury stating that "the only known method to get at data from which to estimate what a man is damaged by reason of discrimination in not furnishing cars or other facilities of transportation is to give the shipper discriminated against what would have been a reasonably fair profit on whatever is shown to be the fairly probable output of the mine discriminated against, less what was actually shipped from such mine," presents a reasonable and proper measure of damages.

2. The fact that the coal was left in the ground and might be available for future shipment, is immaterial, in the absence of any proof offered by the defendant that the plaintiff would realize for its coal, when shipped in the future, as much as it would have realized if shipped during the period of the action.

3. In an action of tort a greater latitude is allowed by the court to the jury in the assessment of damages than is allowed in actions of contract. All damages which ordinarily, and in the natural course of things, have resulted from the commission of the wrongful act are recoverable.

*Railroads — Discrimination — Furnishing cars — Actions—Interstate Commerce Commission—Lis pendens.*

4. An action by a coal company against a railroad to recover damages for alleged illegal discrimination in furnishing transportation facilities in which plaintiff only claims to recover for profits on coal which it was prevented from shipping "to points and places within the state of Pennsylvania" is not barred by the pendency of a discrimination suit between the same parties before the Interstate Commerce Commission.

STEWART and BROWN, JJ., dissent as to the measure of damages.

Argued May 9, 1910. Appeal, No. 396, Jan. T., 1909, from judgment of C. P. Clearfield Co., May T., 1908, No. 223, on verdict for plaintiff in case of Hillsdale Coal & Coke Company v. Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Action to recover damages resulting from discrimination in furnishing transportation facilities.

The facts appear in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $17,500.

The court charged in part as follows:

[The principal defense as we understand it, relied upon by the defendant company, is one of law or at least a mixed question of law and fact. This suit is brought to recover only that portion of the damages claimed to have accrued to the plaintiff company by reason of discrimination which relates to Pennsylvania business. It seems that in May, 1907, the plaintiff company began an action before the Interstate Commerce Commission, a tribunal created by an act of congress, which proceeding was prosecuted before said commission and included a claim for money damages for alleged discrimination. . In the claim

made before the Interstate Commerce Commission the same testimony was offered as was offered in this case, or at least practically the same data was furnished, and a claim there made for a very large sum of money by the plaintiff company.  The plaintiff here contends that the sum there claimed for was the damages which they attempted to show accrued to the plaintiff company by reason of the coal trade outside the state, which would be properly interstate commerce business and to which the Interstate Commerce Commission probably had jurisdiction.  Mr. J. O. Clark, on behalf of the plaintiff company, testified that the business of the plaintiff company outside the state, for which claim was made before the Interstate Commerce Commission was seventy-five and three-quarters per cent of their entire business, while their intrastate or Pennsylvania business amounted to only twenty-four and one-quarter per cent of the total, and that their claim as made up in the statement presented for action before the Interstate Commerce Commission, amounting to something over $127,000, was based entirely upon their foreign or interstate business, while the claim here is for twenty-four and one-quarter per cent of Pennsylvania business.  The defendant, however, claims that because the plaintiff company claimed for such a large amount, covering the items and for more claim than its output capacity could possibly have been, that it is barred as a matter of law from claiming anything in this suit.  For the present purpose of this case we overrule this contention as a matter of law and say to you, that if the plaintiff company has satisfied you that it has sustained damages by reason of the alleged discriminatory acts of the defendant company, it is entitled to recover at your hands against the defendant company in some amount.  This amount is entirely for the jury.  It may be only nominal or it may be for what it has shown to you is its damage in dollars and cents based upon the data furnished you.] [4]

[The question as to the measure of damages for such

injuries as are alleged in this case is one for which we do not have any guide in former decisions. It is claimed, for instance, by the defendant, that a plaintiff, if discriminated against, still has his coal and therefore should not be allowed to estimate his profits. This contention, it seems to us, would logically lead to considerable difficulty, because it can be logically shown that if a man were discriminated against wholly and prevented from shipping coal at all, there could be no damages estimated on any kind of figures given or to be given. As we look at it, the only known method to get at data from which to estimate what a man is damaged by reason of discrimination in not furnishing cars or other facilities of transportation, is to give the shipper discriminated against what would have been a reasonably fair profit on whatever is shown to be the fairly probable output of the mine discriminated against, less what was actually shipped from such mine, and it is on this theory that the plaintiffs have presented the data which we have gone over here.] [8]

*Errors assigned* were instructions of court and answers to points.

*John G. Johnson, Francis I. Gowen* and *Thomas H. Murray,* with them *James P. O'Laughlin* and *Hazard Alex. Murray,* for appellant.—Damages are not to be measured by the possible, or even probable, profits which might have enured to the plaintiff on coal which it would have mined had it received cars: Watterson v. Allegheny Valley R. R. Co., 74 Pa. 208; Witherbee v. Meyer, 155 N. Y. 446 (50 N. E. Repr. 58); Allis v. McLean, 48 Mich. 428 (12 N. W. Repr. 640); Abbott v. Gatch, 13 Md. 314.

The best rule seems to be that of Pittsburg Coal Co. v. Foster, 59 Pa. 365.

*David L. Krebs,* with him *A. M. Liveright,* for appellee, cited: Hazleton Coal Co. v. Buck Mountain Coal Co., 57 Pa. 301; Wright v. B. & O. R. R. Co., 32 Pa. Superior

Ct. 5; Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45; Puritan Coke Co. v. Clark, 204 Pa. 556; Hitchcock v. Supreme Tent, 43 Am. St. Repr. 423; Wilson v. Wernwag, 217 Pa. 82; Workman v. R. R. Co., L. R. 32 Q. B. 79; Gulf, etc., Ry. Co. v. Martin, 28 S. W. Repr. 576; Houston E. & W. Texas Ry. Co. v. Campbell, 91 Tex. 551 (45 S. W. Repr. 2); Central, etc., R. R. Co. v. Morris, 68 Tex. 49 (3 S. W. Repr. 467).

OPINION BY MR. JUSTICE POTTER, July 1, 1910:

In this action, the plaintiff, a mining corporation, sought to recover damages from the defendant company, for injuries resulting from the discrimination exercised against it by the defendant, in the refusal to furnish proper transportation facilities. The plaintiff alleged discrimination particularly in favor of certain competitive mines situated upon the same branch of defendant's railroad, which were operated and controlled by David E. Williams & Company. In the statement of claim it was averred that plaintiff's mines in Indiana county, known as Hillsdale No. 2 and No. 3, were fully equipped for mining coal, and had an actual output capacity of 800 tons per day from the two mines, if given the same pro rata distribution of cars as was awarded by defendant to the competing mines of Williams & Company. It was alleged that the actual output capacity of the latter mines did not greatly, if at all, exceed that of plaintiff. But that the defendant company, in violation of its duty under the law, did for the purposes of distributing cars to the several mines, rate the mines operated and controlled by Williams & Company with an output capacity of 2,300 tons per diem during the years 1904 and 1905, and in the early part of 1906, increased the same to 2,550 tons per diem, while it rated plaintiff's mines with an output capacity of only 475 tons per diem during the same period of time. That the said rating, upon which was based the number of cars to be awarded, was an undue and unreasonable discrimination in favor of the mines of

Williams & Company to the prejudice and disadvantage of plaintiff, and was a violation of defendant's duty as a common carrier, to render fair and proportionate service to shippers on its lines, in furnishing facilities for transportation. That between October 1, 1903, and May 1, 1907, the plaintiff at its two mines received from defendant but 3,134 cars of thirty-five tons capacity each, while during the same period of time the defendants furnished the mines of Williams & Company with 26,691 cars of the same capacity. That plaintiff at its mine, Hillsdale No. 2, constructed at its own expense, a side track connecting with the track over and from which coal from Hillsdale No. 3 mine had for a long time prior thereto been handled by defendant to its Cush creek branch; but that defendant, by its servants and agents, spiked down the switches of the said side track leading to the tipple of mine No. 2, so that the same could not be used for a period of about eighteen months, entirely prohibiting plaintiff from shipping any coal from the said mine during that time.

The question of discrimination was submitted to the jury as one of fact, and the uncontradicted evidence was ample to warrant them in finding that the defendant subjected the plaintiff to unjust and unreasonable discrimination, both in the rating of the mines as to capacity, and in the allotment of the cars; and that this discrimination prevented it from making sale of a portion of its coal. As to the general policy of discrimination against the plaintiff, no evidence was offered with reference thereto, by defendant. No excuse was made for spiking down the switch to one of plaintiff's mines, nor for its refusal to furnish cars to plaintiff on many days when they were furnished by it, to the competing mines. The trial in the court below resulted in a verdict in favor of plaintiff for $17,500; and from the judgment entered thereon, defendant has appealed. We see nothing in the record of which defendant can fairly complain, as to the manner in which the case was submitted to the jury on

the questions of fact, as to the various acts of discrimination. In his charge, the trial judge carefully reviewed the evidence as to the rating of plaintiff's mines, and that of the competing mines of Williams & Company, and as to the failure of defendant to furnish cars, and their irregular distribution; as to the amount of coal shipped by the plaintiff, and the amount it could have shipped had its quota of cars been furnished, and the prices at which the coal could have been sold, and as to the cost of production and transportation. Nor is there any merit in the suggestion that the pendency of a suit between these same parties before the Interstate Commerce Commission, should be a bar to the present action. Plaintiff only claimed to recover in this action for profits on coal which it was prevented from shipping "to points and places within the state of Pennsylvania." The evidence on the trial was restricted to such business only. The Interstate Commerce Commission would have no jurisdiction over a claim for damages sustained in connection with commerce wholly within the state, and therefore the suit pending before that body could not affect the plaintiff's right to recover for the damages here claimed.

Plaintiff's claim for damages was based upon the Act of June 4, 1883, P. L. 72, which forbids discrimination in the furnishing of facilities for transportation, and makes the offending common carrier liable for treble damages to the party injured. The claim in this case was, however, not pressed to the full extent, but was for single damages only. Counsel for appellant complain that in instructing the jury as to the measure of damages to be applied, the trial judge said, "As we look at it, the only known method to get at data from which to estimate what a man is damaged by reason of discrimination in not furnishing cars or other facilities of transportation, is to give the shipper discriminated against what would have been a reasonably fair profit on whatever is shown to be the fairly probable output of the mine discriminated against, less what was actually shipped from such mine." And

it was upon that basis that the data of plaintiff was presented. We think the measure thus applied was reasonable and proper. If the defendant, a common carrier, wrongfully refused to transport the coal of the plaintiff, it ought to place the plaintiff in the same situation it would have been in had the carrier performed its duty. The actual loss suffered by the plaintiff by reason of the defendant's failure to discharge its duty, is a fair measure of the damage. Loss of profits in such a case must of course be clearly shown, and the proof should not present merely a speculative basis for the claim. In that respect we think the evidence was satisfactory here. In Wilson v. Wernwag, 217 Pa. 82, the principle is referred to with approval, as set forth in Hitchcock v. Supreme Tent, 43 Am. State Rep. 423, that "the profits lost constitute the legitimate measure of damages. The law is not so blind to justice as not to require the defendant to respond in damages, if there is any reasonable basis for their ascertainment." The Interstate Commerce Commission seems to have adopted the rule that where discrimination is found to have been made by the carrier in the distribution of coal cars, damages are to be awarded in the amount of the profits that the shipper would have gained by the sale of his coal at the place to which he desired to ship it, had he not been discriminated against, less the cost of transportation: Eaton v. C. H. & D. Ry. Co., 11 Interstate Com. Rep. 619; Paxton Tie Co. v. Detroit Southern R. R. Co., 10 Interstate Com. Rep. 422; Glade Coal Co. v. B. & O. R. R. Co., 10 Interstate Com. Rep. 226. Counsel for appellant argue that because, as a result of defendant's discrimination, the coal of the plaintiff was left in the ground, and might be available for future shipment, and as there was no evidence that the prices which prevailed throughout the period of the action were abnormal, or in excess of those reasonably ruling, there was no room for the inference that the plaintiff would realize for its coal when it might be shipped in the future, less than it would have realized if shipped

during the period of the action. But the burden was upon defendant, to show anything of this kind by way of mitigation of damages, if it could do so, and it offered no evidence for any such purpose. Counsel for appellant admit in their argument that plaintiff "showed the profit which would have been secured if it had not been prevented from making the sale;" but they suggest that the loss of this profit may not have been permanent, as it may be that the coal will be sold at some subsequent time, at equally as great a profit. But if such possible future profits could properly be set up in mitigation of the ascertained damages, which we doubt, it would be the duty of the defendant to show in its defense the probability and the amount of such profits. It attempted no such proof. It should be remembered, too, that "in the action of tort, a greater latitude is allowed by the court to the jury in the assessment of damages than is allowed in actions of contract." And that "All damages which ordinarily and in the natural course of things have resulted from the commission of the wrongful act are recoverable:" 1 Addison on Torts (6th ed., Am. note), secs. 64–65. Many elements enter into the successful prosecution of a mining business beside the fact of the existence of the raw coal itself. That is only the material upon which those engaged in preparing it for market expend their time, energy and capital. The fact that plaintiff may be able profitably to expend time, energy and capital in the future in connection with the mining of the coal which it was prevented from using during the period of which complaint is made, by the discrimination of defendant against it, is no good reason why it should not now be compensated for loss shown to have been incurred by it in the past, through the wrongful acts of the defendant.

Plaintiff suffered more than a mere detention of its product, as it was kept from the market by the discrimination of defendant. It was put to the expense of care and maintenance of the mines and machinery and mules.

Its working force was subject to disorganization, and many other items of expense were necessarily incurred. No other rule than the allowance of the reasonable profits it would have made, can fairly cover these items, and make good to plaintiff the loss resulting from the interruption of its business.

The assignments of error are overruled, and the judgment is affirmed.

Mr. Justice Stewart, dissenting:

I cannot agree that the measure of damages here applied was correct. Punitive damages were not claimed, but single, and compensatory for the loss sustained by the plaintiff by reason of the defendant's failure, for a definite period, to furnish it with as many cars for the transportation of its coal as it was entitled to under a fair and equitable allotment. In other words, the plaintiff complains that it was denied the privilege of a market for so much of its coal as represents the difference between what it did ship and what it would have shipped, had its quota of cars been furnished covering the period of the defendant's default. This coal remained unmined and in place. The time came when the defendant lifted its embargo and the way was opened for the plaintiff to mine and ship its coal. Mining operations were continued. Presumably, this very coal which was left unmined because of defendant's default was thereupon mined and shipped. If the prices then ruling for coal were lower than during the period of the embargo, the difference would accurately measure the plaintiff's loss. If other incidents increased the loss, it was for the plaintiff to establish such additional loss. If the prices were so much in excess of the prices ruling during the embargo as to more than compensate for the delay, while such circumstances would not excuse the defendant for its default, it would follow that the plaintiff was without injury. The case assimilates itself to an action against a carrier for detention of goods, and the same measure of damages should

apply.   The measure adopted permitted recovery for damages purely speculative.

BROWN, J., concurs in this dissent.