MICHAEL DEVANEY, Defendant in Error, *vs.* THE OTIS ELEVATOR COMPANY *et al.*—(THE STANDARD COMPANY, Plaintiff in Error.)

*Opinion filed June 20, 1911—Rehearing denied October 4, 1911.*

1. LIMITATIONS—*when plea of statute is proper in action for negligence.* Where a cause of action is stated for the first time in an amended or additional count, the suit, as to such cause of action, is regarded as begun when the additional or amended count was filed, and if the time prescribed for bringing the suit had then expired, a plea of Statute of Limitations presents a good defense.

2. SAME—*amended count merely re-stating the cause of action previously alleged is not barred.* An amended or additional count merely re-stating, in different form, the same cause of action alleged in the original declaration, which was filed within the time prescribed by the Statute of Limitations, is not open to the defense of the statute.

3. NEGLIGENCE—*what constitutes a cause of action for negligence.* The essential elements of a cause of action for negligence are the existence of a duty on the part of the person charged to protect the complaining party from the injury received, a failure to perform such duty, and an injury resulting from such failure; and the absence of any one of such elements from a declaration will render the declaration bad.

4. SAME—*duty of owner or occupant of a building who invites others there.* Where the owner or occupant of premises directly

or by implication invites persons to come upon the premises, the law imposes upon him the duty to use reasonable care to see that the premises are in reasonably safe condition, so that such persons shall not be injured while using the premises for the purpose for which the invitation was extended.

5. SAME—*what is not the statement of a new cause of action.* The fact that an additional count, charging the occupant of a building with negligence with reference to the safety of the premises, fails to make any reference to the ownership of the building does not change the character of the cause of action alleged in the original declaration, which charged the same negligence but averred that the defendant occupied a part of the premises, which were owned by another person, who was named therein.

6. SAME—*when question of defendant's negligence is for the jury.* Whether a manufacturing company was guilty of negligence in maintaining a rigid platform for unloading heavy crates so near an exhaust pipe that ice would form on the platform in cold weather, rendering it dangerous, is a question for the jury, where there is evidence tending to show that the danger from ice could have been removed by having a platform which would fold up when not in use.

7. SAME—*when question of selecting unsafe way to do work is for the jury.* Whether the plaintiff and his companions selected an unsafe way of loading a heavy crate in a wagon in attempting to load it by hand instead of using a tackle is a question for the jury, where the evidence is not only conflicting as to whether any tackle was provided, but also shows that it was the custom to load similar crates by hand and that no tackle was ever used.

8. INSTRUCTIONS—*when an instruction concerning deduction of damages is improper but harmless.* An instruction in a personal injury case which permits the jury to determine whether a company not a party to the suit was jointly guilty of negligence with the defendant, and upon the result of its determination to deduct or not deduct from plaintiff's damages a certain sum paid by said company to the plaintiff for a covenant not to sue, is improper, as there can be no apportioning of damages among joint wrongdoers; but the giving of the instruction is not harmful to the defendant.

9. SAME—*when instruction does not authorize jury to disregard testimony.* An instruction stating that "the jury is not bound to believe anything to be a fact simply because a witness has stated it to be so, provided the jury believe, from all the testimony, that such witness is mistaken or has testified falsely," is not incorrect, and does not authorize the jury to disregard the entire testimony of a witness, without regard to whether or not his false testimony

was knowingly and willfully given. (*Perkins* v. *Knisely,* 204 Ill. 275, distinguished.)

10. SAME—*instruction is not bad because it ignores negative defenses.* An instruction authorizing the jury to find the defendant guilty if they believe the plaintiff was injured by the negligence of the defendant, "as charged in the declaration," and that the plaintiff was in the exercise of due care for his own safety, is not objectionable because it ignores the negative defenses made by the defendant to show that it was not guilty of negligence and that the plaintiff was not in the exercise of due care for his safety.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of. Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

MORSE IVES, for plaintiff in error.

B. J. WELLMAN, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action for personal injury, originally brought by Michael Devaney against the Otis Elevator Company. By an amendment the Standard Company and E. T. Harris were joined as defendants. In consideration of $375 the plaintiff gave the Otis Elevator Company a covenant not to further prosecute suit against that company. The suit thereafter proceeded against the Standard Company and E. T. Harris. The original declaration, consisting of one count, alleged that E. T. Harris was the owner in fee simple of a certain factory building located at or near the north-west corner of Fifteenth and Laflin streets, in the city of Chicago, and that the Standard Company was engaged in the manufacture of ornamental iron and had its office and place of business in a part of the aforesaid building leased from E. T. Harris, who furnished the steam power by which the Standard factory was operated. The declaration alleges that on the north side of said factory

building, in the second story thereof, there is a large door out of which the goods sold by the Standard Company were delivered to its customers, and that about two feet underneath said door the defendant company, prior to the injury complained of, erected a stationary platform extending out from the said building about two feet, for the purpose of enabling its patrons to load heavy crates or boxes of ornamental iron into wagons which were driven outside and underneath said door; that about twelve feet from said platform the defendants allowed to remain and exist a steam exhaust pipe, out of which large quantities of steam are emitted and had been for a long time prior to the injury complained of. The declaration charges that the steam from the exhaust pipe, in cold and freezing weather, would fall on the platform and freeze, thereby covering said platform with a solid coating of slippery ice, sloping off to the edge of the platform; that said ice thus formed upon the platform made it dangerous and unsafe to take large boxes or crates out of said door. The declaration alleges that the defendants knew of the dangerous condition of said platform, or should have known of it in the exercise of reasonable care, and failed and neglected to remove said ice or said steam exhaust pipe, or to provide any way by which said platform could be closed or turned up when not in use and thus prevent the accumulation of ice thereon. It is charged that Michael Devaney was on the 19th day of January, 1902, employed by the Otis Elevator Company; that said company had purchased a crate of ornamental iron from the Standard Company, and that the plaintiff, with other employees, was ordered to go to the Standard Company's factory and get said crate; that said crate was lowered from the door to said platform by three of the servants of the Otis Elevator Company, while the plaintiff and two other men, also employees of the Otis Elevator Company, were in the wagon for the purpose of receiving said crate and lowering it on to the wagon; that when said

crate was lowered from the door to the platform the end
of the crate slipped upon the ice on said platform and fell
upon the plaintiff, knocking him out of the wagon and
severely injuring him, while the plaintiff was in the exer-
cise of due care for his own safety. Subsequently the suit
was dismissed as to E. T. Harris, and on October 24, 1907,
an additional count was filed against the Standard Com-
pany alone. This additional count is substantially the same
as the first count, except that it alleges that the Standard
Company was engaged in carrying on its business in a cer-
tain building, and the additional count does not disclose
who the owner of the building was. To the additional
count the Standard Company filed a plea of not guilty and
a special plea of the Statute of Limitations. A demurrer
was sustained to the special plea, and upon a trial the plain-
tiff obtained a verdict for $2000. A motion for a new
trial was made and overruled and judgment entered upon
the verdict. The judgment having been affirmed by the
Appellate Court for the First District, the record has been
brought to this court for review by *certiorari*.

The alleged errors relied upon for a reversal in this
court are: (1) That the original declaration did not state
a cause of action, and that the court erred in sustaining the
demurrer to the plea of the Statute of Limitations to the
additional count filed after the period of limitation had run;
(2) that the court erred in not instructing the jury to find
the plaintiff in error not guilty, first, because the evidence
did not show that the plaintiff in error was guilty of any
negligence; and second, because the injury was caused by
the defendant in error and his associates selecting an un-
safe way of lowering the said crate to the wagon when the
plaintiff in error had provided a safe method and safe ap-
pliances for doing that work; (3) that the court erred in
giving certain instructions to the jury. These alleged er-
rors will be considered in the order in which they are stated
above.

*First*—The first error complained of is, that the court erred in sustaining the demurrer to the plea of the Statute of Limitations. The rule is familiar that when a cause of action is stated for the first time in an amended or additional count the suit is regarded, as to such cause of action, as having been commenced at the time when such amended or additional count is filed, and if the period fixed by the Statute of Limitations has run when such a count is filed, the plea setting up the statute is a proper plea and a good defense for such newly stated cause of action; (*McAndrews* v. *Chicago, Lake Shore and Eastern Railway Co.* 222 Ill. 232;) but when the amended or additional count is a re-statement, in different form, of the cause of action previously stated in counts filed within the time prescribed by the Statute of Limitations, a plea of the Statute of Limitations presents no defense to such re-statement of the cause of action and is therefore bad on demurrer. The question raised by the demurrer to the special plea is whether the original count stated a cause of action, and, if so, is the additional count a re-statement of the same cause of action. The substance of the original count has been stated above. From such statement it will be noted that the defendant in error rests his right to recover on the alleged violation of the duty which the plaintiff in error owed to keep the premises which it used and occupied in a reasonably safe condition for the use of persons who in the exercise of reasonable care might lawfully be thereon, by the express or implied invitation of the plaintiff in error, for the purpose of transacting business with it. The essential elements of a cause of action for negligence are: (1) The existence of a duty on the part of the person charged to protect the complaining party from the injury received; (2) a failure to perform that duty; and (3) an injury resulting from such failure. When these elements concur they together constitute a cause of action for negligence, and the absence of any one of these would render the

pleading bad. (2 Cooley on Torts,—3d ed.—1411; *Chicago Union Traction Co.* v. *Giese,* 229 Ill. 260.) The law imposes the duty upon the owner or occupier of premises who directly or by implication invites persons to come upon his premises, to take reasonable care to see that his premises are in a reasonably safe condition, so that persons who come there upon his invitation shall not be injured while using such premises with reasonable care for the purpose for which the invitation was extended. (*Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596; *Hart* v. *Washington Park Club,* 157 id. 9.) The original declaration stated facts from which the law would impose a duty on the plaintiff in error to use reasonable care to maintain the premises in question in a reasonably safe condition, and alleged a violation of that duty, with a resulting injury, while the defendant in error was in the exercise of reasonable care for his own safety. These averments were sufficient to constitute a cause of action. The additional count filed, to which the Statute of Limitations was pleaded, was substantially the same as the original count. The only difference between the two counts that we have been able to discover is, that in the original count it is charged that the plaintiff in error occupied a part of the premises and that E. T. Harris was the owner and landlord, while in the additional count it is charged that the plaintiff in error occupied the premises in question and nothing is said as to the title or by what means the plaintiff in error claims a right to occupy such premises. These differences in the two counts are of no consequence. Nothing is omitted from either count that is essential to the cause of action. There was no error in sustaining the demurrer to the plea of the Statute of Limitations.

*Second*—Plaintiff in error next contends that the court should have instructed the jury to find a verdict of not guilty. Under this assignment of error two points are argued:

(*a*) It is contended that the evidence did not show any negligence on the part of the Standard Company. The evidence tends to prove that the Standard Company was engaged in the manufacture of ornamental iron and that the Otis Elevator Company was one of its customers. The Standard Company occupied all of the second floor of the premises located at Fifteenth and Laflin streets. On the north side of said building there was a large door out of which crates of manufactured products were received by the Otis Elevator Company. About two feet below the door a rigid platform extended from the wall out about two feet. At one end of the platform an iron ladder was placed to enable the men to reach the second floor from the ground. Some twelve feet from the platform there was a steam exhaust pipe, out of which escaped large quantities of steam. The evidence shows that the steam from the exhaust pipe would blow down about the door and platform, and when the weather was cold enough this steam would condense and form ice on the loading platform. The evidence also tends to show that the dirt swept out of the door would fall on the platform, giving the ice a black appearance; that on the nineteenth day of January the Otis Elevator Company sent the defendant in error and five other men, including Peter Gustafson, their foreman, with a wagon and team, for the purpose of getting a large crate of iron. The wagon was driven into the alley, under the edge of the platform below the door. The crate of iron which was wanted was about one foot thick and five feet wide and seven feet long, and weighed between eight hundred and nine hundred pounds. The crate was several feet south of the door on the second floor. It was placed on a "dolly" and rolled over to the open door. It was then stood upright near the edge of the door and two men held it, while the four others were in the wagon for the purpose of receiving the crate and placing it in the wagon. The expectation was that the crate would slide down until one

end would rest on the platform and then be tilted over and the other end would come down against the standards of the wagon. When the crate was tipped over from the door and came against the platform it continued to slip on the ice and fell upon the standards of the wagon and against the defendant in error. The evidence shows that the crate did not make any stop after it struck the platform, but continued to slide with increasing velocity until it came to rest on the wagon. The evidence shows that it had been the custom of the employees of the Otis Elevator Company to take similar crates out of the building in the same manner that this one was being handled. The evidence does not, however, show that the defendant in error had ever assisted in this particular work before the day on which he was hurt. The evidence shows that the platform had been used in taking crates out of the building during all of the time that the plaintiff in error had been in the building, which was several years before the accident. There were no means used by the plaintiff in error to remove or prevent the accumulation of ice on this platform. There was no serious conflict in the evidence, except as to matters of detail in respect to the situation of these premises and the circumstances connected with the injury. The evidence sustains the charge in the declaration. We think it was a fair question of fact for the jury to determine whether or not, under the circumstances stated, the plaintiff in error was guilty of negligence in maintaining this platform with an accumulation of ice upon it. It seems to us that the injury of the defendant in error was one that might reasonably be expected from the condition of the premises and the manner in which they were intended to be used. It is shown that the difficulty could have been easily removed by constructing the platform so that it would fold up against the side of the building when not in use. Whether or not the plaintiff in error should, in the exercise of reasonable care, have adopted this method of construction or some other

means to remove the dangerous accumulation of ice upon the platform was a question of fact, under the circumstances, for the jury to determine.

(b) The second argument presented by the plaintiff in error in support of this assignment of error is, that the defendant in error and his associates selected an unsafe and dangerous method of lowering the crate to the wagon when other and safer means and appliances were furnished by the plaintiff in error. The facts and circumstances upon which this contention is based are, that there was a beam ten inches square extending from the top of the door out over the platform, which was placed there for the purpose of handling heavy crates by the use of hoisting tackle, consisting of hooks, pulleys and chains. There is no controversy about the beam being in place as claimed, but there is serious conflict in the evidence as to there being hoisting tackle visible about the premises. A number of witnesses testify that they were there at the time of the accident and assisted in lowering the crate and that they saw no tackle of any kind. It is also proven by the defendant in error's foreman, and others, that they had often gotten crates down from that door and had never used any tackle and had never seen any used for such purpose. Some of the witnesses for the plaintiff in error testify that the hoisting tackle was hanging on a hook behind the door at the time of the accident. The evidence as to the tackle being there for use is conflicting. If the jury believed that there was no tackle there, then the argument of the plaintiff in error on this point cannot avail in this court, since we must assume that every controverted question of fact is settled by the judgment of the Appellate Court in favor of the defendant in error; but we think that, even if it be conceded that the tackle was on the premises, as claimed by the plaintiff in error, still, in view of the uncontradicted evidence that no use had ever been made of such tackle by the men who were handling this crate, and the further fact that they

had always taken out similar crates in the same way as this one was being handled, it was still a fair question for the jury to say whether there was contributory negligence in failing to use the tackle on the occasion of the accident. There was no error committed by the trial court in refusing to direct a verdict of not guilty.

· *Third*—Plaintiff in error complains that the court erred in giving instruction No. 2 for defendant in error. This instruction, after stating the rule for estimating the damages in case the defendant in error was entitled to recover, proceeds to inform the jury that from the amount of actual damages sustained should be deducted $375 paid by the Otis Elevator Company, provided the jury believe that the Otis Elevator Company was jointly guilty with the plaintiff in error of the negligence that caused the injury; and the jury were also informed that if the Otis Elevator Company was not guilty of negligence which approximately contributed to the injury, the $375 should not be deducted from the actual damages sustained by the defendant in error. This instruction had no proper place in this case and should not have been given. It improperly submits to the jury the issue as to whether the Otis Elevator Company was guilty of negligence in connection with the injury when no such issue was made in the pleadings. The Otis Elevator Company was not a party to this suit, and it was improper to submit the question of its responsibility for the injury to the jury by this instruction. The $375 paid the defendant in error by the Otis Elevator Company was not paid as part compensation for the injury he received. It was paid for a covenant not to further prosecute the suit against that company. The jury had nothing to do with that question and the instruction should not have been given. The $375 paid by the Otis Elevator Company could not be considered by the jury in part payment of defendant in error's damages. While this instruction is erroneous for the reason stated, we cannot see how it could have misled

the jury to the prejudice of the plaintiff in error. It told the jury that under certain circumstances the $375 should be deducted from the amount of damages plaintiff had sustained. If the jury found the facts upon which this instruction is predicated as therein stated, the effect of the instruction was to reduce the damages $375, and in this view it would be favorable to the plaintiff in error. If, on the other hand, the jury considered that the Otis Elevator Company was not jointly guilty of negligence with plaintiff in error, they were instructed to disregard the payment of $375. This part of the instruction simply told the jury what they should have done independently of the question of the participation of the Otis Elevator Company in the wrong complained of. The rule in regard to joint tort feasors is that each wrongdoer is responsible for the whole amount of damages, and that there is no such thing as apportioning the damages among joint wrongdoers. This instruction was improper and should not have been given, but we are of the opinion that it ought not to lead to a reversal of the judgment.

Instruction No. 10 is complained of by the plaintiff in error. That instruction tells the jury that "the jury is not bound to believe anything to be a fact simply because a witness has stated it to be so, provided the jury believe, from all the testimony, that such a witness is mistaken or has testified falsely." The criticism made upon this instruction is, that it authorizes the jury to disregard the testimony of a witness if he has testified falsely, without the limitation "knowingly and willfully testifies falsely," which this court held in *Perkins* v. *Knisely,* 204 Ill. 275, and in other cases, to be necessary before the jury would be warranted in disregarding the entire testimony of the witness. The instruction given in this case is unlike the instruction in the *Knisely case,* which purported to state the conditions under which the jury might disregard the entire testimony of a witness. The instruction here under consideration

simply tells the jury that they are not required to believe
anything to be a fact because a witness has stated it to be
so, provided the jury believe, from all the testimony, that
such witness is mistaken or has testified falsely,—that is to
say, if the jury believe that the witness is mistaken as to
the particular fact, or has stated such fact falsely, the jury
are not required to believe it. If a witness, through mis-
take or a disregard for the truth, or for any other reason,
states a fact which, from a consideration of all of the evi-
dence, the jury believe to be untrue, the jury are not re-
quired to believe the statement of such witness as to that
particular fact, but the jury would not be warranted in dis-
regarding the entire testimony of such witness under the
conditions stated in this instruction. The instruction is not
open to the criticism made upon it.

The plaintiff in error next complains that the court
erred in giving instruction No. 13. That instruction di-
rects the jury to find the defendant guilty if they believe,
from the evidence, that the plaintiff was injured by or in
consequence of the negligence of the defendant, as charged
in the declaration, and that the plaintiff, just before and at
the time of the injury, was in the exercise of ordinary care
for his own safety. Instructions similar to this one have
often been before this court. In the case of *Krieger* v.
*Aurora, Elgin and Chicago Railroad Co.* 242 Ill. 544, many
of the previous cases in which this instruction was consid-
ered are referred to and the conditions under which it has
been approved or disapproved are there pointed out. The
objection that has usually been urged against this form of
an instruction is, that it refers the jury to the declaration
to determine what the issues are. This was the complaint
made against the instruction in the *Krieger case,* and the
only one there considered. The objection made to the in-
struction in this case is, that it ignores the defenses that the
plaintiff in error had made the ice safe to walk on and had
provided a safe means to lower the crate. This objection

is not tenable. The charge in the declaration which the instruction requires the jury to believe before they can find the plaintiff in error guilty, is that the platform was in an unsafe and dangerous condition by reason of the ice being thereon. The defenses which are supposed to have been ignored by the instruction were merely negative in character and amount to a general denial that the platform was unsafe. By the very nature of things the jury could not find that the platform was unsafe without considering the evidence which tended to show that it was safe. The same observation applies to the contention that plaintiff in error had provided a safe means of lowering the crate. This contention manifestly is based upon the controverted question of fact in reference to the hoisting tackle. The instruction requires the jury to believe that the defendant in error was, before and at the time of the accident, in the exercise of due care. He could not have been in the exercise of due care if he deliberately undertook to lower the crate in a dangerous manner when by the use of appliances at hand a safe method of lowering the crate could have been adopted. The objection made to this instruction is only available where some affirmative defense is not negatived by the averments of the declaration. (*Kirk & Co.* v. *Jajko*, 224 Ill. 338.) That condition does not exist in this record.

Plaintiff in error also complains that the court erred in giving instructions Nos. 14, 18 and 21. We have examined the instructions and considered the objections made to them, but fail to find any error therein that requires a reversal of this judgment.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*