(No. 31507.—

THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, Appellant, *vs.* AMERICAN TRANSIT LINES, INC., Appellee.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

THOMPSON & MARTENSEN, of Paxton, and POPE & DRIEMEYER, of East St. Louis, for appellant.

BUSCH & HARRINGTON, of Champaign, (W. KENNETH PORTER, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Suit was filed in the circuit court of Ford County by the New York, Chicago and St. Louis Railroad Company against the American Transit Lines, Inc. A trial before a jury resulted in a verdict for the plaintiff in the sum of $17,800. After the verdict was returned, plaintiff filed a motion for judgment in its favor against the defendant for the amount of $51,242.22, notwithstanding the verdict of the jury in favor of plaintiff for the above amount. An alternative motion for a new trial was also filed by plaintiff. Both motions were overruled. A countermotion was filed by the defendant, asking the court to reduce the verdict by crediting thereon the sum of $2000, which plaintiff had received from two other defendants to whom it had given a covenant not to sue. This motion was allowed and judgment entered on the verdict in the sum of $15,800. The plaintiff appealed to the Appellate Court, where the judgment was affirmed. No cross appeal was taken by appellee. The cause is now in this court, leave to appeal having been allowed.

The record discloses that on June 14, 1940, a tractor truck with trailer attached, while being used by the appellee in the transportation of freight along Illinois State Highway No. 48 negligently ran into a freight train of appellant at a railroad crossing near the corporate limits of Gibson City, in Ford County. As a result of the collision, twenty cars of the freight train were derailed, seventeen of them being so badly broken up that they were completely destroyed, or, as the witnesses say, demolished by the collision; the track and roadbed of appellant were torn up,

and a considerable amount of freight and commodities contained in said cars was lost or destroyed.

The evidence in the case discloses that there were three different types of freight cars wrecked in the collision, each at the time and place having a fair market value of from $1500 to $2000, depending upon the type. Each of the demolished cars was described in detail by type and number, and the refrigerator cars given a value of $2000 each; the fair market value of the tank cars $1800 each, and the average market value of each car $1804.42. The evidence of witnesses, and the pictures offered in evidence, disclose that after this collision the cars were a mass of broken and twisted wreckage, beyond repair for any useful purpose. On cross-examination one of the witnesses testified that there were some railroad trucks hauled away, and that there was some salvage in the way of iron that was taken off of the tracks. No value or estimate of value was placed upon this material, nor was there anything to show that it was usable, or had, or had not, been excluded from the amount of damage of the wrecked vehicles, testified to by the plaintiff's witnesses. The defendant offered no testimony in the case.

At the close of the evidence the court gave the following instruction: "The court instructs the jury that in arriving at your verdict in this case should you find for the plaintiff you are not to take into consideration as an element of damage the value of the cars destroyed in the collision as there is no competent evidence to justify your consideration for such item as an element of damage." Exception to the giving of this instruction was preserved in both the motion for judgment notwithstanding the verdict, and in the motion for a new trial. No reason appears in the record, nor can we find any justification in the briefs, for the giving of such an instruction. The witnesses who testified were thoroughly familiar with the line of business and the fair value of freight cars of the type destroyed,

and the only argument advanced that we can find is that it appeared that there was some material left which might have some salvage value, and therefore the testimony of the witnesses that the cars were destroyed or demolished, and of the damage in dollars and cents, was rendered entirely worthless by this fact alone. We do not believe this result necessarily follows.

The railroad track of appellant was covered with wreckage and debris, damaged cars, rails, ties, and other material coming from the destroyed equipment, which it was necessary to clear away before the track could again be used. The proof that there were some parts of these cars which were apparently not destroyed, in the sense they still remained in the form of a truck or other iron parts, does appear, but whether such property had value if the cost of carrying it to some other place were deducted therefrom is not shown. The general rule as to the measure of damages where there is loss or destruction of personal property is its value or reasonable worth at the time and place of its taking or destruction. *Ellis* v. *Hilton,* 78 Mich. 150, 43 N.W. 1048; *Watt* v. *Nevada Central Railroad Co.* 23 Nev. 154, 62 A.S.R. 772; *Louisville & Interurban Railway Co.* v. *Schuester,* 183 Ky. 504, 209 S.W. 542; 15 Am. Jur. 530.

There seems to be some difference in the rule between property merely damaged and property completely demolished or destroyed. The evidence in this case, undisputed by any offered by the defendant, is that these seventeen cars were demolished or destroyed. There is no proof that a truck or salvage was obtained from each of these cars, but merely that some trucks or salvage were removed from the right of way. The most effect that this could have upon the testimony of the plaintiff's witnesses as to amount of damage would be as to its weight. It is not a circumstance which destroys the testimony altogether, and therefore, if there was any inference that the amount of damage

arising from the destruction of the property should be in any way diminished by such facts it would be a question for the jury to determine, and not for the court to say that as a matter of law no evidence had been offered upon the subject.

In this connection it should be noticed that the apparent purpose of the giving of the instruction was to diminish or mitigate the amount of damages suffered by the plaintiff. It is well settled that in an action for damages for destruction of personal property the plaintiff has the burden of establishing the damages which result from the defendant's tortious act, but in so far as it may be contended that the damages might or should have been minimized by taking steps to reduce the resulting damages the burden of proof rests upon the defendant. *Howard* v. *Daly,* 61 N.Y. 362; *Hillsdale Coal & Coke Co.* v. *Pennsylvania Railroad Co.* 229 Pa. 61, 78 Atl. 28; *International Correspondence School* v. *Crabtree,* 162 Tenn. 70, 78 A.L.R. 330; *Huntington Easy Payment Co.* v. *Parsons,* 62 W. Va. 26, 57 S.E. 253.

It can be readily seen that a rule excluding all of the testimony of damage or destruction of personal property from the jury because it appears on cross-examination some value might remain in the destroyed property for other purposes, would lead to very serious questions. It would require plaintiff in cases involving the destruction of property to have experts qualified to prove to what use the remaining material might be made, and determine whether any value existed over and above the cost of transportation, and many other factors, which would place upon a plaintiff in a lawsuit involving the question of damages to personal property an intolerable and unnecessary burden.

The reason the burden of proof of mitigation is placed upon the defendant is well stated in the *Parsons case* above, as follows: "Evidence offered to establish a defense, oper-

ating to mitigate damages, ought to be sufficient in law to sustain a finding. It must extend to all the elements of such defense, which may include a number of connected facts, and usually does include two or more. The evidence offered must tend to prove all the essential facts, for the admission of only partial proof would confuse and mislead the jury." Apparently, the proof in the present case that there might be some salvage value, without a single iota of evidence as to its value, misled both the trial and Appellate courts. If the defendant contended, which does not appear from the record, that this destroyed the plaintiff's testimony, he should have gone further, and established some amount in dollars and cents that this salvage would have reduced the damage, but the fact, alone, that some indestructible parts were not demolished, is not sufficient, since the testimony of the plaintiff fixed an amount of damage for the demolished or destroyed cars, which, without further limitation, would take into consideration all other elements included therein.

We are of the opinion the instruction in the instant case infringed upon the province of the jury. If the defendant sought to call attention to the weight of the plaintiff's testimony it could do so by proper instruction, but that was not done in this case. It was improper to take away all of the testimony of damage to the seventeen cars upon the assumption they had become valueless because some dealer in junk might find some value in the debris. They no longer had value as freight cars. What we said in the case of *Schneiderman* v. *Interstate Transit Lines, Inc.*, 394 Ill. 569, although involving a somewhat different situation, is in point here. In that case the testimony of the witness was entirely excluded because of his assumed insanity and lack of mental capacity, as disclosed by his cross-examination, but we reversed the case because the weight of his testimony was for the jury to determine, and

not for the court to decide as a matter of law. In this respect the action of the circuit court, and of the Appellate Court in affirming it, was erroneous.

It is next contended by appellant that it was error to reduce the verdict by crediting thereon the amount of $2000, which appellant had received in consideration of a covenant not to sue from two other defendants, who had been dismissed from the suit before the trial. It is contended that the consideration received for the covenant not to sue one of two or more tort-feasors cannot be considered as payment in part of plaintiff's damages, in a suit brought against another joint tort-feasor, and it is claimed that this proposition is supported by the case of *Devaney* v. *Otis Elevator Co.* 251 Ill. 28. However, in *Garvey* v. *Chicago Railways Co.* 339 Ill. 276, and *McManaman* v. *Johns-Manville Products Corp.* 400 Ill. 423, sanction is given the doctrine that where an injury has been received by the negligence or wilfulness of two or more joint tort-feasors and suit is brought against one or more of them to recover damages, any amounts received by plaintiff for execution of a covenant not to sue some one or more of the joint tort-feasors are to be applied in reduction of the damages recoverable from those remaining in the suit. The latest pronouncement upon the subject is the well-reasoned case of *Aldridge* v. *Morris,* 337 Ill. App. 369, wherein the two last-mentioned cases were followed, and which case we very carefully considered on petition for leave to appeal and after such consideration denied it. We are of the opinion that the circuit and Appellate courts properly applied the rule in this case.

However, the instruction directing the jury to disregard all evidence concerning the amount of damage to the destroyed cars took from the jury a very essential part of the case, without any legal justification. We do not believe this is a case where judgment notwithstanding the verdict should be granted, as the amount of damages is essentially a question, under proper instructions, for the jury.

The judgment of the Appellate Court for the Third District, and the judgment of the circuit court of Ford County, are reversed, and the cause is remanded to the circuit court of Ford County for a new trial.

*Reversed and remanded.*