Mary Aldridge, Administratrix of Estate of Mildred R. Seeber, Deceased, Appellant, v. Arthur Morris, Appellee.

**Gen. No. 10,340.**

Opinion filed May 10, 1949.  Released for publication May 27, 1949.

CASSIDY, SLOAN & CRUTCHER and MICHAEL A. SHORE, all of Peoria, for appellant.

HEYL, ROYSTER & VOELKER, of Peoria, for appellee; CLARENCE W. HEYL, of Peoria, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Plaintiff, Mary Aldridge, administratrix of the estate of Mildred R. Seeber, deceased, is appealing from a judgment of the circuit court of Peoria county, entered

upon a jury verdict finding defendant, Arthur Morris, not guilty, in a proceeding for damages for the wrongful death of plaintiff's deceased in a collision between the car driven by defendant and a Shell oil truck.

There are three legal issues presented on this appeal: whether the verdict of the jury is manifestly against the weight of the evidence; whether certain instructions were improper; and whether the matter of a covenant not to sue, entered into between plaintiff and the Shell Oil Co., was erroneously introduced into the cause.

From the controverted evidence it appears that at about 9:30 p. m. on January 11, 1947, plaintiff's deceased was riding in a car driven by defendant in a southerly direction on Washington street in Peoria. This is a four-lane through street, approximately 56 feet wide, and is intersected by Western avenue, on which the witness, Ralph Ford, was driving a Shell oil truck with two tankers, about 44 feet long, in an easterly direction, and approaching the intersection from the west.

According to the witness' testimony, he stopped at the stop sign, intending to turn left in order to proceed north on Washington street. From the stop sign, however, it is not possible to see traffic approaching from the north on Washington street, but after he pulled the front part of the truck just ahead of the curb, and while the remainder of the tankers were still behind the curb, he saw defendant's car approaching from the north about 275 feet away. Nevertheless, Ford proceeded to make the left turn across the intersection at about 2 or 3 miles per hour, with his truck and trailers at a 45 degree angle.

There were no street lights on the corner, and because of the offset in the street and the obstruction at the northwest corner of the intersection, which consisted of railroad ties piled up to 25 feet high, it appears from the exhibits introduced in evidence, that one traveling south on Washington, as defendant was

doing, could not see a vehicle approaching from the west on Western avenue. Inasmuch as defendant was precluded from testifying by virtue of sec. 2 of the Evidence Act [Ill. Rev. Stat. 1947, ch. 51, par. 2; Jones Ill. Stats. Ann. 107.068], his conduct is reported by the witness, Ford, who stated on one occasion that defendant was driving at 50 miles per hour, and at another, that he drove down Washington at 60 miles per hour.

There was conflicting testimony as to whether the pavement was icy in spots, nevertheless, when defendant's car was 50 feet from the oil truck, it began weaving, and skidded toward the center of the street, colliding into the rear tank of the Shell oil truck, which was still partially blocking the intersection.

There was also conflicting evidence about the witness Ford's statement that due to the fact that the pavement was slippery he could not get his truck in motion fast enough to clear the intersection before the oncoming car.

It is uncontroverted, however, that the impact of the blow demolished the left side of defendant's car, although the right side was practically intact, and that the collision caused Mildred Seeber to sustain a basal fracture, from which she died.

Defendant's amended answer alleged, and plaintiff admitted, that the Shell Oil Co. paid plaintiff $4,500 for a covenant not to sue, entered into before this proceeding was commenced. Plaintiff denied, however, that this sum was for damages, and averred that it was only to purchase peace.

On the basis of the foregoing evidence, the circuit court entered judgment on the jury's verdict, finding defendant not guilty, and denied plaintiff's motion for a new trial.

With reference to plaintiff's contention that the judgment was manifestly against the weight of the evidence, it is fundamental that to sustain plaintiff's charge that defendant was guilty of wilful and wanton

misconduct, plaintiff must establish that defendant either wilfully or intentionally injured plaintiff's deceased, or exhibited a reckless disregard for her life, and mere speed is not of itself proof of wilful and wanton misconduct. (*Streeter v. Humrichouse,* 261 Ill. App. 556.) Whether defendant's proceeding down the four-lane through street at 50 or even 60 miles per hour at a time when there was little or no traffic, and particularly when defendant could not see a vehicle approaching the intersection from the west because of the offset in the street and the obstruction at the corner, constituted wilful and wanton misconduct, is clearly an issue for the jury. (*Morgan v. New York Cent. R. Co.,* 327 Ill. 339, 346; *Ruwisch v. Knoebel,* 233 Ill. App. 526.)

■■ The jury herein may have deemed more reprehensible the conduct of the driver of the Shell oil truck who proceeded across the intersection with his two tankers extending some 44 feet in the face of the on-coming car, when he could easily have stopped before entering the intersection. In any event it is not the province of this court to substitute its judgment for that of the jury in determining what is wilful and wanton misconduct, and it does not appear that the verdict is manifestly against the weight of the evidence.

■ Appellant next contends that there were eight instructions given on behalf of defendant which were erroneous. Our courts have recognized the harmless error doctrine, whereby it is sufficient if the instructions as a series correctly advise the jury as to the law, and will not mislead the jury, even though there may be some error in isolated instructions. (*Crow v. Blaser,* 335 Ill. App. 281; *Palmer v. Miller,* 310 Ill. App. 582; *Kavanaugh v. Washburn,* 320 Ill. App. 250.)

■■ Instruction no. 5 informed the jury that the fact that defendant did not testify could not be considered as a circumstance for or against him, and is merely a correct statement of the law under sec. 2 of the Evidence Act. Instructions 6 and 7 informed the

jury that they were not bound to take the testimony of a witness as true if they were satisfied from the facts that he is mistaken or his testimony is untrue, and that they had the right to take into consideration the wit-. ness's demeanor, the reasonableness of the statements made, his opportunity for knowing the facts, his intelligence, and prejudice, if any. This instruction has been approved in *Village of DesPlaines v. Winkelman,* 270 Ill. 149.

Instruction no. 8 states the elements necessary to constitute wilful and wanton misconduct, and it is not clear how it could be prejudicial to plaintiff. The words "drove and turned" used therein may not be strictly descriptive, but they are not so misleading as to constitute reversible error. The use of the word "charge" in instruction no. 9 clearly does not modify plaintiff's burden of proof; nor is the double admonition in instruction 10, nor the use of the expression "to show," in no. 11, of any consequence in misleading the jury. (*Beidler v. King,* 209 Ill. 302.) Moreover, the instruction 11, stating that plaintiff must prove that the acts charged were the proximate cause of the injury, is fundamental, and a correct statement of the law. Instruction no. 12 was deemed proper in *Brown v. Illinois Terminal Co.,* 319 Ill. 326.

It does not appear, therefore, that the jury could have been misled by the instructions, nor that the law was misstated therein.

The fundamental issue in this cause is, however, whether the covenant not to sue entered into between plaintiff and the Shell Oil Co. should have been introduced into this proceeding. This is a question upon which the decisions are not in harmony, either in Illinois, or in other jurisdictions, and the broad underlying policies of the law are in apparent conflict. While it is elementary that contribution by joint tortfeasors will not be enforced and that each is liable for the full damages on the ground that the law

will not undertake to adjust the burdens of misconduct, it is an equally well-established precept of justice that a person is entitled to only one satisfaction for an injury.

With these preliminary observations the court will re-examine the cases involving the issue and endeavor to formulate a rationale founded upon sound precedent. Illinois has been cited both as a jurisdiction where a covenant not to sue and the payment therefor may be introduced in mitigating the damages of a joint tortfeasor, and as a jurisdiction where such evidence is inadmissible. (104 A. L. R. 932, 941.)

Although *Chicago v. Babcock,* 143 Ill. 358 (1892) has been cited as first establishing the rule that sums paid for a covenant not to sue can be introduced to mitigate the damages of a joint tortfeasor, the only issue in that case was whether suit could be maintained against the defendants, and the court held that it was bound by the jury's finding that the particular sum was paid, not for an accord and satisfaction, which would have released the defendants, but for a covenant not to sue, which rendered them still liable. The court stated, in passing, that, if the sum was merely part payment and not a bar to suit, it was to defendant's interest, for the damages recoverable would be reduced. The only Illinois authority relied upon therein was *Parmelee v. Lawrence,* 44 Ill. 405, where the court distinguished between a covenant not to sue and a release as far as further action was concerned against a co-obligor on a contract.

In 1911, the Illinois Supreme Court, without reference to the *Babcock* case, held in *Devaney v. Otis Elevator Co.,* 251 Ill. 28, that an instruction was erroneous which informed the jury that if it found a third party also guilty of negligence, they could deduct the amount paid by him for a covenant not to sue, from the damages due from defendant.

Plaintiff therein brought suit against the Otis Elevator Co., his employer, and by amendment joined E. T.

Harris, who owned a certain building where the injuries occurred, and the Standard Oil Company, which conducted its business and maintained an apparently defective exhaust pipe in the building. The exhaust pipe caused a loading platform to be covered with ice, and plaintiff was injured thereby while on the premises pursuant to his employer's business. In consideration of $375 plaintiff gave the Otis Elevator Co. a covenant not to prosecute suit, and E. T. Harris was later dismissed.

The court stated, in substance, that since the Otis Elevator Co. was not a party to the suit, it was improper to submit its responsibility to the jury by the instruction, and the sum paid for a covenant not to sue could not be considered as part payment of plaintiff's damages. The court, in addition, reiterated the principle that each wrongdoer is responsible for the whole amount of the damages, and that the law would not countenance apportioning the damages among wrongdoers.

It is not entirely clear, as is apparent in subsequent cases, whether the court predicated its conclusion on the fact that the employer, Otis Elevator Co., was not a party to the proceeding, or whether, even if it were a party, as a joint tortfeasor the sums paid by it could mitigate the damages due from the other joint tortfeasors.

That same year the Appellate Court in *Gore v. Henrotin,* 165 Ill. App. 222, without reference to the Otis Elevator case held that where plaintiff sustained injuries in a railway collision and settled with one railroad for a certain sum, it was not error to introduce this covenant in a suit against the other railroad company, inasmuch as plaintiff could only recover the actual damage sustained less the sum paid by the first railway, even though it was not a party to the proceeding.

This case was, apparently overlooked by the Appellate Court in *Scharfenstein v. Forest City Knitting Co.,*

253 Ill. App. 190 (1929) where the court relied upon, and quoted with approval, the *Otis Elevator Co.* case, *supra.* The plaintiff administrator therein sought to recover for the death of her intestate, a railroad switchman, caused by defendant's placing piles of dirt along a railway siding, and the court held that evidence of a covenant not to sue executed with a railroad company was not admissible, and that defendant was not entitled to the benefit of the railroad's payment to an employee. Although the court predicated its decision on the fact that the railroad and the defendant were not joint tortfeasors, it stated that under the *Otis Elevator Co.* case, *supra,* even joint tortfeasors are not entitled to have their damages reduced by sums paid by one joint tortfeasor for a covenant not to sue.

The following year our Supreme Court, without reference to the *Otis Elevator, Gore,* or *Scharfenstein* cases, *supra,* followed the authority of the earlier *Babcock* case, in *Garvey v. Chicago Rys. Co.,* 339 Ill. 276, 286. Plaintiff therein sued the Chicago Railway and Yellow Cab companies for injuries sustained in a collision between a street car and a taxi; and a jury verdict of $25,000 was entered against both defendants. However, on the motion for a new trial the suit was dismissed against the cab company, and the railway offered proof of a settlement and covenant not to sue in an effort to mitigate the damages. The court held that this evidence should have been admitted and the damages reduced thereby.

Although this case differs factually from the *Otis Elevator Co.* case, *supra,* in that the party securing the covenant did go to trial, there is also a basic inconsistency in the rules of law concerning the mitigation of damages of a joint tortfeasor.

These inconsistencies among the authorities were recognized in *Onyschuk v. A. Vincent Sons Co.,* 277 Ill. App. 414 (1934), where it was held that the trial court did not err in refusing to give an instruction to reduce

damages by reason of payments made by a party against whom suit had been dismissed. The court, while purporting to follow the *Otis Elevator Co.* case, endeavored to reconcile its decision with the *Garvey* case, *supra,* by stating that it had allowed some evidence in the record that plaintiff had received $1,200 "on account of this law suit," and that the jury had probably taken cognizance of that fact. According to this decision, evidence of a covenant not to sue a joint tortfeasor is admissible, but an instruction mitigating damages in the amount paid for the covenant is improper.

A similar analysis was made by the court in *Caruso v. City of Chicago,* 305 Ill. App. 571 (1940), where it was held that there could be no apportionment of damages in a suit against the city and a contracting company and that the sums paid by the contracting company for a covenant not to sue could not be deducted from the award of the jury against the city. The court stated that since the jury had been apprised of the covenant, in all probability, in view of the small verdict, the jury deducted the payment made by the contracting company. Thus, while paying tribute to the maxim of no contribution among tortfeasors, the court approves the practice of the jury in deducting payments made for a covenant not to sue.

In sharp contrast the court in *Stoewsand v. Checker Taxi Co.,* 331 Ill. App. 192 (1947), without discussing the issue, reached a conclusion similar to that in the *Garvey* case, and held that on a retrial of the cause, they would have the right in assessing plaintiff's damages to deduct the sum, if any, paid to plaintiff by the Checker Taxi Co. for a covenant not to sue.

In *Bejnarowicz v. Bakos,* 332 Ill. App. 151 (1947) the court cited both the *Otis Elevator Co.* and *Garvey* cases, *supra,* in support of the proposition that defendants in a dram shop proceeding are entitled to show an agreement between plaintiff and one of the defendants

entered into in full or partial satisfaction of plaintiff's damages in order to reduce the damages recoverable against them. In the recent Supreme Court case of *McManaman v. Johns-Manville Products Corp.*, 400 Ill. 423 (1948), it was held, without reference to precedent, that the trial court correctly excluded evidence of payment made by a railroad for a covenant not to sue, given by its employee in a suit against the negligent third party, on the ground that the railroad was not a joint tortfeasor, and that cases allowing such deductions involved only joint tortfeasors.

From the foregoing analysis, it is apparent that courts have felt constrained to recognize the principle of no contribution among tortfeasors, yet they have been reluctant to sanction double recovery for plaintiff, and in endeavoring to reach a satisfactory disposition, they have emphasized such factors as whether the covenant was given by a party to the suit (*Otis Elevator Co.* case); at what stage in the proceedings it was given (*Garvey* case); whether the jury was apprised of the covenant (*Onyschuk and Caruso* cases); whether it was given by a joint tortfeasor (*Johns-Manville Products Corp.* case); and whether plaintiff was in fact compensated for the entire damage by the jury verdict.

The problem is of sufficient import that its determination should not rest upon such shifting legal grounds. This court holds that where plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such payment, made before or after judgment, may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit. Moreover, it should be proper to submit not only evidence of such payment, but instructions informing the jury of their right to consider such a payment in arriving at their verdict.

Under this interpretation, the court would not be adjusting the burdens of misconduct, but merely assuring a single recovery for the damages sustained, rather than sanctioning as many complete recoveries as there may be defendants. This rationale would not permit the introduction of this issue in a case where payment was made pursuant to a contract obligation, or by an employer in settlement of compensation liability, but only where the covenantee's liability is predicated in tort. It would reconcile, furthermore, the results, if not the comments, of the courts in many of the conflicting cases. For in the *Otis Elevator Co., Scharfenstein* and *Johns-Manville Products Corp.* cases, *supra,* where the covenant and payment were deemed inadmissible, the payments were made by an employer apparently to settle compensation liability, whereas in the *Garvey, Gore* and *Stoewsand* cases, *supra,* where such evidence was deemed admissible, the payment was made by a joint tortfeasor.

It does not appear to this court to be legally sound to admit evidence of the covenant and payment, and deny a proper instruction for the mitigation of damages, as in the *Onyschuk* and *Caruso* cases. Nor does it seem reasonable to predicate the result upon whether the covenantee is a party to the suit, as in the *Otis Elevator Co.* case, for a plaintiff could secure a double recovery merely by filing separate suits against each tortfeasor, or by settling out of court with one joint tortfeasor, and suing the other.

It is submitted further that the conclusion reached herein would be consistent with the weight of authority in other jurisdictions. (104 A. L. R. 932 *et seq.*) In *Brandstein v. Ironbound Transp. Co.,* 112 N. J. L. 585, 172 A. 580, the court recognized the conflicting decisions, and stated that the sounder rule was that when suit is brought against one joint wrongdoer, the amount received for the execution of a covenant not to sue an-

other joint wrongdoer, is to be credited on any liability which may be found to exist against the ones sued. This position is consistent with the rule promulgated in the Restatement of Torts (sec. 885).

Under our analysis of this cause, therefore, the trial court did not err in denying the motion to strike the amended answer setting forth the covenant and payment, and in admitting evidence thereon. Inasmuch as no error appears in the record, the judgment of the trial court must properly be affirmed.

*Judgment affirmed.*