Raymond De Lude et al., Plaintiffs-Appellants, v. Michael Rimek et al., Defendants-Appellees.

Gen. No. 45,991.

Opinion filed November 10, 1953. Rehearing denied December 1, 1953. Released for publication December 1, 1953.

MAGES & SACHS, of Chicago, for appellants.

FOSTER I. RAY, ALBERT M. HOWARD, and ALVIN GLEN HUBBARD, all of Chicago, for certain appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs appeal from a judgment on a verdict of not guilty in a suit under the Dram Shop Act (Ill. Rev. Stat. 1951, ch. 43, par. 135 [Jones Ill. Stats. Ann. 68.042]). They seek to recover for injuries sustained August 16, 1948 as the result of a collision between the automobile in which they were riding and an automobile driven by one Earl MacNevin. Defendants are

owners of establishments selling intoxicating liquors, and, it is charged, sold liquor to MacNevin, causing his intoxication and the resulting collision. The trial resulted in a verdict of not guilty and the court entered judgment thereon.

The principal assignment of error urged by plaintiffs is the introduction in evidence of a covenant not to sue given by plaintiffs to MacNevin, in consideration of substantial payments made to plaintiffs by him. The trial court permitted examination of witnesses as to these payments and instructed the jury "that a person is entitled to only one satisfaction for the same injuries sustained in any accident," and that if the jury believed the moneys paid the various plaintiffs by MacNevin fully compensated plaintiffs for the injuries and damages sustained in this accident, plaintiffs would have no right to recover additional sums in this case. The principal question presented for review is the propriety of this instruction; that is, whether payments made for a covenant not to sue may be applied in reduction of damages recoverable.

Illinois has been cited as a jurisdiction on both sides of the question, 104 A. L. R. 932, 941. The shifting course of the Illinois law on this subject is fully reviewed in *Aldridge v. Morris*, 337 Ill. App. 369 (May 1949) and there the court laid down the following principle, p. 380:

". . . where plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such payment, made before or after judgment, may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit."

It should be noted that the court did not use the phrase "joint tort-feasors," but made the principle applicable

to "persons whose tort liability arises out of the same circumstances." This, the court said, was in accordance with the weight of authority and consistent with the rule promulgated in Restatement of Torts, Sec. 885. The court excepted from the operation of the principle payments made by an employer to an employee, and limited the principle to cases in which the covenantee's liability is predicated on tort. Cases in which payment is made pursuant to a contractual obligation or by an employer in settlement of a compensation liability would not come within the rationale of the *Aldridge* case. Petition for leave to appeal was denied by the Supreme Court and later, in the case of *New York, C. & St. L. R. Co. v. American Transit Lines, Inc.,* 408 Ill. 336 (1951), the Supreme Court referred to the decision in *Aldridge v. Morris* as a well-reasoned case "which case we very carefully considered on petition for leave to appeal and after such consideration denied it."

In the case just cited, *New York, C. & St. L. R. Co. v. American Transit Lines,* after the jury had returned a verdict of $17,800, the court, on petition of defendant, reduced the verdict by $2,000 paid for a covenant not to sue by two other defendants who had been dismissed out of the case. The Appellate Court for the Third District affirmed the trial court and thereupon plaintiff appealed to the Supreme Court. The Supreme Court held (p. 342) "that where an injury has been received by the negligence or wilfulness of two or more joint tort-feasors and suit is brought against one or more of them to recover damages, any amounts received by plaintiff for execution of a covenant not to sue some one or other of the joint tort-feasors are to be applied in reduction of the damages recoverable from those remaining in the suit." The court reversed the judgment in that case because of an error in the

instructions with respect to damages, but sustained the action of the trial court in allowing the remittitur *upon petition after verdict.*

In *Hyde v. Montgomery Ward & Co., Inc.,* 343 Ill. App. 388 (May 1951) the Third District reaffirmed its decision in *New York, C. & St. L. R. Co. v. American Transit Lines,* 339 Ill. App. 282, and, referring to the decision of the Supreme Court in the same case, re-enunciated the principle as applicable to cases in which "tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit or not." In the *Hyde* case, the covenantee had paid $4,500, and the trial court had refused to admit evidence thereof. The jury returned a verdict of $3,000. After rendition of the verdict, defendant by petition submitted the question of the payment of $4,500 by the covenantee. The case was reversed and the cause remanded for new trial because of error of the trial court in refusing to admit evidence of the payment.

As we pointed out, the Supreme Court used the phrase, "joint tort-feasors," in giving its otherwise unqualified approval to the *Aldridge* case. Did they, by this phrase, intend to restrict the application of the principle to those cases in which persons jointly act together in the commission of a tort, or is it applicable to those described in the *Aldridge* case as "persons whose tort liability arises out of the same circumstances"? In Restatement of the Law of Torts, Sec. 885, p. 460, the principle is stated as applicable to "Payments made by one tort-feasor on account of a harm for which he and another are each liable . . . ." The word, "joint," it will be noted, is not used—advisedly we think. In Andrew's Stephen's Pleading, 2nd Ed., Sec. 39, the author says:

470

". . . it may be observed that in general there cannot be such a thing as a joint tort, for torts are in general in their nature several. But where many persons are concerned in the commission of a tort, the plaintiff may ordinarily sue as many or as few as he chooses, and no advantage can be taken of it."

Thus, even at an early period, authorities on the subject comprehend joint tort-feasors as embracing not alone those who in concert commit an unlawful act, but those who are "concerned in the commission of a tort." Today, many actions of negligence are predicated on little or no fault, and parties have been jointly chargeable who had no relationship with each other. The Dram Shop Act is a case in point. "Joint tort-feasors," if it ever did embody the concept of joint connivance for some immoral or criminal misbehavior, no longer has that exclusive connotation. We conclude that in using the phrase "joint tort-feasors," in *New York, C. & St. L. R. Co. v. American Transit Lines, supra,* the Supreme Court did not mean to qualify its approval of the *Aldridge* case, and that the principle there announced governs the case we now have before us.

██ Plaintiffs argue that the Dram Shop Act gives them a cause of action wholly separate from their cause of action against MacNevin and that the covenant not to sue MacNevin should, therefore, not reduce defendants' liability. This argument is based on the premise that the Dram Shop Act imposing, as it does, liability without fault, is a punitive statute rather than a remedial one. If the Act is punitive, it is argued, plaintiffs' recovery from MacNevin should not diminish the "penalty" to be imposed on defendants. While the Dram Shop Act imposes liabilty without "fault," and in that respect is punitive, we are of the opinion that as the

471

remedy provided is compensation for damages, it is in that aspect remedial. It measures recovery by "all damages sustained." It seeks to make whole the innocent victims of injuries or losses caused by intoxicated persons. In *Lester v. Bugni,* 316 Ill. App. 19, 29 (1942), the court said that the Dram Shop Act is remedial in character and should be liberally construed, although it recognized that there were penal elements in the statute. To the same effect is the case of *Klopp v. Benevolent Protective Order of Elks,* 309 Ill. App. 145, 152. In the case of *Manthei v. Heimerdinger,* 332 Ill. App. 335 (1947), the injured party settled with the intoxicated person and gave him a release. He then sued the tavern owner who sought to set up the release as a bar to any suit under the Dram Shop Act. The court sustained the position of the defendant. saying that although the Dram Shop defendants and the intoxicated person were not joint tort-feasors, the plaintiff's injury was a single, indivisible one and the damages he sustained were inseparable. Therefore, the court said, the rule applied in this case as in the case of joint tort-feasors. The court distinguished the case of *Philips v. Aretz,* 215 Minn. 325, 10 N. W. (2d) 226, where a contrary conclusion was reached, on the ground that the Minnesota Dram Shop Act imposes a penalty on tavern owners, while the Illinois statute only seeks to provide compensation for one injured in his person or property by the tortious acts of an intoxicated person. The court further pointed out that while in some cases there might be a different measure of damages for the two separate actions, in that case the measure was the same both against the intoxicated person and the tavern owner.

██ In accord with these cases, we hold that insofar as it has a bearing on the points involved in the instant case, the Dram Shop Act is remedial and not

punitive. The controlling principle is that where compensation is the objective of the law, recovery is limited to the damages sustained, and any payments made by MacNevin to the end of making plaintiffs whole must be deducted from the recovery in this action.

The practical application of this principle is a separate question and a difficult one. It is well understood by lawyers and judges experienced in such matters that in a case where evidence is offered of the payment of a substantial sum for a covenant not to sue, the jury considers it evidence that the covenantee is the party responsible for the injury, and that defendant or defendants should be exculpated. Hence, there is always an effort on the part of the defense to put the covenant before the jury and to make the most of it during the course of the trial. In the instant case, time and again, and with far more repetition than was necessary to preserve their record, defendants stressed their objections to evidence of damages, on the ground that the covenantee had paid such damages. Thus, when plaintiffs sought to introduce various medical bills into evidence, counsel for defendants, in the presence of the jury, objected on the ground that "the bills have been paid by moneys received from Earl MacNevin or on his behalf. They should not be introduced in evidence again to try to collect a second time in this case." Similar statements were made at least four times, all in the presence of the jury. Again, the following colloquy took place on cross-examination of one of the plaintiffs:

"Mr. Howard: The money you received from Earl MacNevin or on his behalf, the $12,750, plus the $4,079 paid on doctor bills, did that fully compensate you for the injuries you sustained and the expenses you had?

"Mr. Sachs: Object. Question of compensation is for the jury.

"The court: Sustained as to the form of the question.

"Mr. Howard: When you received that money, you dismissed your claim against Earl MacNevin?"

The potential prejudice to plaintiffs from such conduct is obvious. To permit the introduction of the covenant and its attendant facts in every case would seriously jeopardize a plaintiff's opportunity for a fair trial. Further, it would tend to discourage settlement of this type of litigation when two or more defendants are involved.

■ While the amount paid under a covenant not to sue should be deducted from the total damages sustained, we hold it is the function of the jury to find the plaintiff's total damages, and the function of the judge, upon application of the defendant after verdict, to find the amount by which such verdict should be reduced by virtue of any covenant made by the plaintiff with another concerned in the commission of the tort.

It is entirely possible, as was pointed out in the dissenting opinion of Mr. Justice Wheat in *Hyde v. Montgomery Ward & Co., Inc., supra,* that under the method outlined above, the jury may return a verdict against a defendant for less than the amount paid for a covenant not to sue, and that when payments under the covenant are deducted from the verdict, the verdict will be completely eliminated. This merely means that the jury has found that the plaintiff suffered less damages than the covenantee paid when he made his settlement with plaintiff. Many unpredictable factors are involved in the settlement of this type of litigation. We do not believe that militates against the fairness of the procedure outlined above. Obviously, in such a case the judge would merely record that the plaintiff had been fully compensated for his damages and discharge the defendant. We think the procedure is

474

both practicable and judicial, and that the problems involved are not insurmountable.

■ Defendants argue that plaintiffs waived their objections to the introduction of the covenant because, on examination of the jury, plaintiffs apprised them of the existence of the covenant and asked them whether the existence of such a covenant would prejudice them against plaintiffs. Plaintiffs had sought to keep the issue of the covenant out of the case by filing a motion to strike that portion of defendants' answer which set up the covenant as a defense. That motion was overruled by the court and plaintiffs were therefore compelled to go to trial with the issue of the covenant in the case. Under such circumstances, it was proper for them to examine the jury on the question. In *Chicago City Ry. Co. v. Uhter,* 212 Ill. 174, 180, it was held that when the trial court had overruled a party's objections to certain evidence, it was proper for that party to introduce rebuttal evidence without waiving his rights on appeal. To the same effect are the cases of *Teter v. Spooner,* 279 Ill. 39, 46 (1917), and *Scholbe v. Schuchardt,* 292 Ill. 529, 533. In good sense and fairness, the same principle should apply to examination on *voir dire.* We find no merit in defendants' contention.

It follows from what we have said above that the case must be sent back for retrial. The objective of the trial court should be to submit to the jury an issue on the total amount of damages sustained by plaintiffs. The covenant not to sue, as such, and the amounts paid under it, are not relevant to this issue and should not be placed before the jury. The trial court should follow the procedure we have here outlined. So administered, the principle of the *Aldridge* case will accomplish its intended function of preventing recovery beyond the damages sustained.

The judgment of the court below is accordingly reversed and the cause remanded with directions to take such further proceedings as are consistent with the views herein expressed.

*Judgment reversed and cause remanded.*

Tuohy and Robson, JJ., concur.