John Burger, Plaintiff-Appellant, v. Henry Van Severen, Defendant-Appellee.

Gen. No. 11,635.

Second District, Second Division.

February 19, 1963.

Winter & O'Toole, and Eagle & Eagle, of Rock Island, for appellant.

Reidy, Katz, McAndrews, Durkee & Telleen, of Rock Island (Isador I. Katz, of counsel), for appellee.

WRIGHT, P. J.

The plaintiff, John Burger, brought this action in the Circuit Court of Rock Island County under the Illinois Structural Work Act (Ill Rev Stats 1961, c 48, § 60) to recover damages for injuries which he received when the scaffold upon which he was working collapsed. Plaintiff filed suit against the defendant, Henry Van Severen, who had erected the scaffold, and against the general contractor, Rock Island Lumber Company. The Rock Island Lumber Company prior to the trial paid the plaintiff $11,000 in consideration of a covenant not to sue and was dismissed as a party defendant.

The case was tried against the defendant, Henry Van Severen, and the jury returned a verdict for the plaintiff but awarded no damages.

Plaintiff's and defendant's post trial motions were overruled and judgment was entered upon said verdict, from which judgment plaintiff appeals.

The Rock Island Lumber Company had executed a contract with Mr. and Mrs. Hal Scarsdale to put new shingles and a new gutter on their two story frame house in Milan, Illinois. The Lumber Company sublet the gutter work to the plaintiff and sublet the shingling to the defendant. The defendant commenced work on April 13, 1960, and in order to lay the shingles on the roof he erected a scaffold. The scaffold was constructed by means of four iron brackets, or A-frames, nailed to the east side of the house approximately 9 feet apart and over 16 feet above the ground. After the brackets, or A-frames were nailed to the

side of the house, planking was laid across the brackets. The defendant furnished the scaffold and he and his father erected it. The plaintiff was not present when the scaffold was erected.

On the afternoon of April 12, 1960, the plaintiff went to the Scarsdale residence to see how far the defendant had progressed with his work and whether the plaintiff could use defendant's scaffold in doing his guttering work. The defendant was on the scaffold and there was a conversation between the plaintiff and defendant as to the former's use of the scaffold. According to the testimony of the plaintiff, defendant informed him that it would be permissible for him to use the scaffold if he started early the next morning. This conversation was corroborated, in part, by the owner of the property, Mr. Hal Scarsdale and denied by the defendant who testified that the plaintiff did not ask permission to use the scaffold. In any event, the plaintiff and his helper, James Winter, arrived at the Scarsdale residence at approximately 8:00 o'clock a. m. on April 13, 1960, and used the defendant's scaffold to install a section of gutter approximately 20 feet long at the north portion of the east side of the house. After placing this section of guttering in place, they went to the ground and returned to the scaffold with a section of gutter approximately 16 feet long. Plaintiff went to the south end of the scaffold and stood immediately above the southernmost A-frame, holding the south end of the 16 feet section of gutter and using a level to adjust the gutter so it would drain properly to the south. The southernmost bracket of the scaffold pulled loose without any warning and the bracket, scaffold planking and the plaintiff fell over 16 feet to the ground. The plaintiff landed upon a large 8 x 8 railroad tie and was severely injured. The evidence as to how the scaffold was constructed and attached to the building is conflicting.

208

The plaintiff first contends that the trial court, over objection of plaintiff, erred in advising the jurors that the defendant, Rock Island Lumber Co., had been dismissed out of the case and was paying the plaintiff $11,000 for a covenant not to sue and in permitting defense counsel to argue this matter to the jury and produce evidence of the payment.

The trial Judge on voir dire examination, over objection of the plaintiff, told the jurors that the defendant, Rock Island Lumber Co., is not going to appear and that it would be brought out during the course of the trial that they have made a settlement with the plaintiff.

The defendant called the plaintiff as an adverse witness and questioned him concerning the covenant not to sue, which testimony was as follows:

"Q. Mr. Burger, when you commenced this law suit you had also sued Rock Island Lumber Company?

A. Yes, I did.

Q. And on the basis that you felt that they were legally liable to you under the facts and circumstances of your injury?

A. Yes, I did.

Q. I will ask you if at the commencement of this trial—

By Mr. Eagle: (Interrupting) I would like the record just to show an objection to this line of questions, Your Honor.

By the Court: Okey.

Q. (By Mr. Katz): At the commencement of this trial yesterday morning you did agree through your attorneys to dismiss out the Rock Island Lumber Company from this lawsuit for a consideration?

A. That's right.

209

Q. And what was the amount of money which the Rock Island Lumber Company undertook to pay to you to be dismissed out?

A. Well, the attorney said eleven thousand dollars, so I don't know. I didn't see any papers or anything."

In his closing argument to the jury, counsel for the defendant repeatedly referred to the fact that plaintiff had sued the Rock Island Lumber Company and received $11,000 in consideration for a covenant not to sue.

The Appellate Courts of our state are in complete disagreement on the question as to whether or not a covenant not to sue and the payment made for the covenant by a defendant should be admitted in evidence on the trial of the case against a codefendant or codefendants whose alleged tort liability arises out of the same circumstances.

The shifting course of the Illinois law on this subject is fully reviewed in Aldridge v. Morris, 337 Ill App 369, 86 NE2d 143 (Sec Dist, May, 1949) and De Lude v. Rimek, 351 Ill App 466, 115 NE2d 561 (First Dist, November, 1953) in which conflicting rules are enunciated on the procedure to be followed in this type of case.

In Aldridge v. Morris, supra, this court held that the amount received from one defendant for a covenant not to sue should be deducted from the damages recovered from a codefendant joint tort-feasor so as to prevent a double recovery and further stated that it was proper to submit evidence of such payment to the jury. The precise language used by this court being at Pages 380–381 of 337 Ill App and Pages 148–149 of 86 NE2d:

"This court holds that where plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such pay-

210

ment, made before or after judgment, may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit. Moreover, it should be proper to submit not only evidence of such payment, but instructions informing the jury of their right to consider such a payment in arriving at their verdict.

"Under this interpretation, the court would not be adjusting the burdens of misconduct, but merely assuring a single recovery for the damages sustained, rather than sanctioning as many complete recoveries as there may be defendants."

The rule adopted in Aldridge v. Morris, supra, has been adhered to by our Appellate Courts in all subsequent cases in so far as deducting the amount received from one defendant for a covenant not to sue from damages recovered against another defendant, but all of the Illinois Appellate Courts passing upon the question since the Aldridge decision have uniformly held that it is better practice and procedure not to admit into evidence the covenant not to sue and the payment made therefor.

In De Lude v. Rimek, supra, the trial court permitted the introduction in a dram shop case of evidence of an amount paid by the driver (Mac Nevin) of a motor vehicle for a covenant not to sue. In reversing and remanding the cause for a new trial because of the error in permitting evidence of the payment under the covenant, the Appellate Court for the First District took specific note of the decision in the Aldridge case and then stated at Pages 473–475 of 351 Ill App and Pages 564–566 of 115 NE2d:

"The controlling principle is that where compensation is the objective of the law, recovery is limited to the damages sustained, and any payments made by Mac Nevin to the end of making

211

plaintiffs whole must be deducted from the recovery in this action.

"The practical application of this principle is a separate question and a difficult one. It is well understood by lawyers and judges experienced in such matters that in a case where evidence is offered of the payment of a substantial sum for a covenant not to sue, the jury considers it evidence that the covenantee is the party responsible for the injury, and that defendant or defendants should be exculpated. Hence, there is always an effort on the part of the defense to put the covenant before the jury and to make the most of it during the course of the trial. . . .

"To permit the introduction of the covenant and its attendant facts in every case would seriously jeopardize a plaintiff's opportunity for a fair trial. Further, it would tend to discourage settlement of this type of litigation when two or more defendants are involved.

"While the amount paid under a covenant not to sue should be deducted from the total damages sustained, we hold it is the function of the jury to find the plaintiff's total damages, and the function of the judge, upon application of the defendant after verdict, to find the amount by which such verdict should be reduced by virtue of any covenant made by the plaintiff with another concerned in the commission of the tort.

"It follows from what we have said above that the case must be sent back for retrial. The objective of the trial court should be to submit to the jury an issue on the total amount of damages sustained by plaintiffs. The covenant not to sue, as such, and the amounts paid under it, are not relevant to this issue and should not be placed before the jury. The trial court should follow the

212

procedure we have here outlined. *So adminis-tered, the principle of the Aldridge case will accomplish its intended function* of preventing recovery beyond the damages sustained." (Emphasis added.)

In Frame v. Grecivich, 30 Ill App2d 271, 175 NE 2d 415 (Third Dist, May 1961, Abstract Opinion) one of the plaintiffs, Winona Frame, recovered a verdict of $125,000 for injuries arising out of an automobile collision. It was contended on appeal that the trial court erred in refusing to admit into evidence a covenant not to sue which the plaintiff executed in return for $11,000 which she received in a malpractice suit against her physician and failing to instruct the jury thereon. On this question, the court stated: "Although the claimed error cannot be considered because of failure to preserve the same for review, we think it appropriate to observe that defendant's complaint is without merit. Following the entry of judgment on the verdict in the sum of $125,000, the defendant obtained a reduction of the judgment in the amount of the sum paid to plaintiff for a covenant. We think that this was the proper method. De Lude v. Rimek, 351 Ill App 466, 467, 115 NE2d 561."

The question arose again recently in Ryan v. Monson, 33 Ill App2d 406, 179 NE2d 449 (First Dist, Dec 1961). Plaintiff was injured when struck by a car driven by the defendant, Monson, and then run over by a second car driven by one Rafferty. Suit was dismissed against Rafferty and during the trial, counsel for defendant, Monson, sought to introduce evidence that Rafferty had paid a certain sum in consideration for the dismissal. The trial court followed the rule adopted in De Lude v. Rimek, supra, and refused to permit evidence to be brought before the jury concerning the amount of the settlement. On appeal the Appellate Court upheld the trial court and

stated they believed this to be the better and fairer rule to follow.

■■ We believe the sole function of the jury in this type of case is to find first whether or not the defendant is liable and if so to fix the amount of damages. The jury should not be concerned as to how the damages are paid or as to who pays the damages. Permitting the introduction of a covenant not to sue into evidence and the payment thereunder in some cases might seriously jeopardize plaintiff's opportunity for a fair trial and in other cases it might work to the detriment of a defendant. The introduction of such evidence we believe would tend to discourage settlement of this type of litigation; serve no useful purpose and merely lead to speculation and confusion. Such evidence might cause laymen on the jury to conclude that the guilty party is not in the case. Furthermore, the jury might conclude that the plaintiff had received all of the damages he was entitled to, otherwise he would not have been willing to accept the payment under the covenant. It is the function of the jury to determine whether or not defendant is liable and if so to fix plaintiff's total damages, and the function of the court upon application after verdict to determine the amount by which such verdict should be reduced by virtue of any covenant made by the plaintiff with another defendant not to sue.

The able trial Judge who heard the case now before us certainly cannot be criticized for his rulings on the admissibility of the evidence concerning the covenant not to sue, because he was following the clear precedent of this court in Aldridge v. Morris, supra. However, it is the opinion of this court that the rule promulgated by the First District Appellate Court in De Lude v. Rimek, supra, and Ryan v. Monson, supra, and by the Third District Appellate Court in Frame v. Grecivich, supra, is a better and fairer rule for both plaintiffs and defendants in this type of case.

214

■ We hold it is the function of the jury to find the plaintiff's total damages and the function of the judge upon application of the defendant after verdict to find the amount by which such verdict should be reduced by virtue of any covenant not to sue given by the plaintiff to another concerned in the commission of the tort. To the extent indicated herein, the decision of the court in Aldridge v. Morris, supra, is modified.

■ Defendant further contends that plaintiff in failing to object to defendant's closing argument waived any error made by the defendant in his final argument concerning the covenant not to sue and the payment of $11,000. One of the purposes of an objection so that possible error may be preserved for review is to advise the trial court of the matter and reasons for the objection. Plaintiff objected specifically to the trial court's remarks on voir dire examination concerning the covenant not to sue and objected to defendant's interrogation of the plaintiff with respect to the $11,000 which he received for the covenant. At the time final arguments were reached it was obvious that the trial court had adopted the theory of Aldridge v. Morris, supra, and it would have been useless for plaintiff to make further objections and such objections would only have magnified the admission of the covenant not to sue into evidence. It cannot be said that this point was waived by the plaintiff.

■ ■ The plaintiff next contends that the trial court erred in refusing certain of plaintiff's instructions and in the giving of certain of defendant's instructions. It is the well established rule in this state that the instructions will be considered as a whole, and although technical errors may be found to exist therein, where the jury has not been misled and the complaining party's rights have not been prejudiced, such errors will not be deemed grounds for reversal.

215

Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205. We do not believe that the plaintiff can contend in the instant case that his rights were prejudiced by any instructions that were given since a verdict was returned by the jury finding defendant liable.

██ The plaintiff further contends that the court erred in excluding evidence of the arrangements between plaintiff and the general contractor for the use of defendant's scaffold and argues that such evidence is admissible as a part of the res gestae as an exception to the hearsay rule. It is our opinion that the evidence was properly refused.

██ Defendant in a cross appeal filed herein contends that the trial court erred in denying defendant's post trial motion for judgment in favor of the defendant on the issue of liability and in support of said contention argues that defendant was not in charge of operations; that plaintiff was not an employee but an independent unrelated subcontractor and, therefore, plaintiff was not within the intended protection of the Illinois Structural Work Act, supra. Defendant cites Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785, and Taber v. Defenbaugh, 9 Ill App2d 169, 132 NE2d 454. In these cases, it was held that a property owner, who exercised no control over the scaffolds and ladders used in construction work on their premises and had no control over the manner in which the work was done, could not be deemed to have charge of the work under the terms of the Act. However, the facts here differ widely from the above two cited cases not only in that the defendant was a subcontractor while the defendants in the cited cases were owners, but because of defendant's participation in the work being done and his responsibility for and his control over the scaffold.

216

In the case before us, the defendant was a subcontractor participating in a phase of the alterations which required a scaffold. He was the party who built the scaffold and was responsible for its safe construction and use. Under these facts, the defendant had charge of the work within the meaning and provisions of the Illinois Structural Work Act, supra. Lawler v. Pepper Const. Co., 33 Ill App2d 188, 178 NE2d 687.

The judgment of the Circuit Court of Rock Island County, is reversed and the cause is remanded for a new trial.

Reversed and remanded.

CROW and SPIVEY, JJ., concur.