ARLENE PATTON, as Adm'r of the Estate of Gilbert C. Patton, Deceased, Plaintiff-Appellant, v. D. RHODES, LTD., d/b/a Ichabod Tumbles Saloon, *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0074

Opinion filed February 24, 1988.

Douglas N. Dorris, of Harris, Lambert & Wilson, of Marion, for appellant.

Tracy W. Resch, of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

The plaintiff, Arlene Patton, as administrator of the estate of Gilbert C. Patton, deceased, brought suit against defendants, D. Rhodes, Ltd., and Moritz Corporation, under section 6—21 of the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135). The jury returned a verdict for the plaintiff in the amount of $62,000, which was reduced because of statutory limitations to $26,374.50. The dramshop defendants filed a post-trial motion to reduce damages, praying that the judgment be reduced to zero by virtue of crediting a $100,000 wrongful death settlement from the driver of the other automobile against the dramshop verdict. The existence of a covenant not to sue was revealed in early discovery proceedings. After a hearing the motion to reduce was granted and the plaintiff's judgment was reduced to zero. Plaintiff then filed a post-trial motion seeking reinstatement of the judgment and other relief. Plaintiff's motion was denied and this appeal followed.

The plaintiff presents two issues on appeal. First, the plaintiff maintains that the court erred in reducing plaintiff's dramshop judgment by crediting the wrongful death settlement previously received against the judgment. Second, the plaintiff maintains that the trial

court erred in prohibiting her from addressing social security retirement benefits to which the decedent may have become entitled and from which plaintiff may have received support.

As to the first issue, we note that there has been an evolution of cases which includes *Aldridge v. Morris* (1949), 337 Ill. App. 369, 86 N.E.2d 143; *De Lude v. Rimek* (1953), 351 Ill. App. 466, 115 N.E.2d 561; *Slone v. Morton* (1963), 39 Ill. App. 2d 495, 188 N.E.2d 493; *Valentine v. Peiffer* (1964), 53 Ill. App. 2d 477, 203 N.E.2d 179. All these cases were discussed in *Kurth v. Amee, Inc.* (1972), 3 Ill. App. 3d 506, 278 N.E.2d 162. In that case the trial court dismissed certain counts, reasoning that plaintiff was entitled to only one recovery and had already received more than the maximum amount recoverable under the Dramshop Act. The appellate court reversed, stating:

"The underlying principle in all these cases is that there may be but one satisfaction for one injury irrespective of the availability of multiple remedies and actions. (*Haupt v. Golick*, 57 Ill. App. 2d 481, 484; *Slone v. Morton*, 39 Ill. App. 2d 495, 502.) However, this principle should not be used to prevent the recovery of the total, actual damages sustained by an injured party. It is not realistic to conclude that the amount received for a covenant not to sue one of several tort-feasors can be equated with the actual damages sustained by the covenantor. Accordingly, the only sensible procedure to follow is that outlined in the *De Lude* case—assess the total damages sustained and then deduct any amounts already received.

Under this procedure, a plaintiff would not effect a 'double recovery' but be able to recover the actual damages sustained. It is possible, as pointed out in *De Lude*, that the actual damages as determined by the jury (or the court, if there is no jury) could be less than the amounts already received. In such case, the plaintiff has been fully compensated and the defendant would be discharged.

The position urged by the the [*sic*] defendants could amount to an exculpation of dram shop operators in cases where the actual damages sustained exceeded the statutory limits. In such cases, a plaintiff would be forced to proceed under the Act before he attempted to resolve his claim against the other tort-feasors.

We believe that the proper procedure is to assess the total damages, without reference to any amounts already received, and then reduce the verdict by such amounts. The difference, of course, would be subject to the maximum limits provided in

the Act." *Kurth v. Amee, Inc.*, 3 Ill. App. 3d at 510, 278 N.E.2d at 165.

In the instant case, the jury assessed total damages in the amount of $62,000 in manner and form as set forth in section 6—21 of the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135). Section 6—21 provides in part:

> "In every such action the jury shall determine the amount of damages to be recovered without regard to and with no special instructions as to the dollar limits on recovery imposed by this Section."

The $100,000 settlement in the wrongful death case exceeds the total damages assessed in the instant dramshop case. The defendants argue that the *Kurth* case did not involve a wrongful death case, but it cannot be denied that, as in wrongful death cases, there are additional elements, other than loss of support, in a personal injury case. In *Kurth*, the court stated:

> "In the case of *Slone v. Morton*, 39 Ill. App. 2d 495, suit was brought under the Dram Shop Act and sought judgment for $20,000 for loss of support. The trial court granted summary judgment for the defendants on the grounds that the plaintiffs had already received $22,500 paid under the provisions of the Wrongful Death Act. The plaintiff then filed an amended complaint alleging total damages in the amount of $42,500 and, after crediting the $22,500 already received, sought judgment against the dram shop defendants for the difference, $20,000. The appellate court reversed and stated that the pleadings raised a triable issue of fact since the amount already received was to be credited against the total damages as determined by the court or jury." 3 Ill. App. 3d at 509, 278 N.E.2d at 164.

The plaintiff in the case before us on appeal does not contend that she should be allowed to recover from both the wrongful death defendant and the dramshop defendants for the same loss of support damages. Plaintiff, however, does contend that she should be allowed recovery from the wrongful death defendant for elements of damage constituting loss of society, guidance, companionship, felicity, and sexual relations, without that recovery precluding her from seeking compensation for loss of support damages from the dramshop defendants who are obligated statutorily for loss of support damages. Because the dramshop defendants are the parties raising this claim to a setoff, and because the dramshop defendants are the parties profiting from such a setoff, plaintiff contends that the dramshop defendants should bear the burden of establishing that the compensation is being re-

ceived by plaintiff for identical elements of damage before the defendants are entitled to a setoff.

■▌ The plaintiff raises a problem to which this court sees no practical answer. Since the wrongful death case was compromised and settled there is no way to determine how much of that settlement went for each of the various elements of damage. Many unpredictable factors are involved in the settlement of this type of litigation. In our case the jury found that plaintiff had suffered total damages in the amount of $62,000, which was less than she had already been paid by way of settlement. We think the procedure followed by the trial court was both practical and judicial. The trial court acted properly when it reduced the plaintiff's damages to zero. Further, under the posture of this case no hearing was required on defendants' motion to reduce.

As to the second issue, the plaintiff maintains that the court erred in granting defendant's pretrial motion *in limine*, barring plaintiff from commenting or submitting evidence on social security benefits to which the decedent may have become entitled. The record indicates the plaintiff was more interested in commenting on the issue than in introducing evidence on the issue.

The defendants argue that in a dramshop suit, the plaintiff is required to prove the decedent's present earning capacity (*Robertson v. White* (1956), 11 Ill. App. 2d 177, 136 N.E.2d 550) and that social security benefits that might be received in the future are speculative. Further, defendants argue that no offer of proof was made and that social security death benefits are not admissible to mitigate damages under the collateral source rule.

■▌ We have considered the arguments and do not disagree with the trial court's ruling. Allowing such testimony or comments would create many problems and would solve nothing. The plaintiff was still working for the railroad and was 59 years old. The introduction of evidence or comments that he could or might receive social security benefits is very speculative and should not have been allowed.

It is a well-settled rule of law under the Dramshop Act that " 'loss of means of support' has been construed as requiring that the person injured did in fact render support and that no damage award can be based on a future potentiality of support not presently provable." *Shiflett v. Madison* (1969), 105 Ill. App. 2d 382, 387, 245 N.E.2d 567, 570.

In reviewing the entire record in this case, it appears that the admission of comments or evidence as to social security benefits would have been speculative and not presently provable. Therefore, the trial court's ruling on the motion *in limine* was proper and not error.

For the foregoing reasons the judgment of the circuit court of Effingham County is affirmed.

Affirmed.

KARNS and CALVO, JJ., concur.