WERNER'S FURNITURE, INC., Plaintiff-Appellant, Cross-Appellee, *v.* COMMERCIAL UNION INSURANCE COMPANY *et al.*, Defendants-Appellees, Cross-Appellants.

First District (1st Division)   No. 60723

Opinion filed May 24, 1976.

60

Rabens, Formusa & Glassman, of Chicago (George C. Rabens, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini and Frank L. Schneider, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Werner's Furniture, Inc. (plaintiff) brought action against six insurance companies upon their policies seeking an accounting to determine plaintiff's loss and damage due to a fire on plaintiff's business premises. Plaintiff sought recovery for damage to the contents of the store and the signs on the building, and also for business interruption. A jury found in favor of plaintiff in the total amount of $11,016. Plaintiff appeals and defendant cross-appeals.

In this court, plaintiff urges that the damages awarded are grossly inadequate so that plaintiff should be awarded a new trial on the issue of damages only; the trial court should have instructed the jury to disregard defenses concerning alleged arson by plaintiff and the filing of fraudulent proofs of loss; the trial court should have directed a verdict in favor of plaintiff and then directed the jury to assess damages and the trial court erred in refusing an instruction tendered by plaintiff regarding proof of fraud in connection with the proofs of loss. Defendants contend that

plaintiff's evidence of damage was not worthy of belief and that the verdict as rendered was within the prerogative of the jury. On the cross-appeal, defendants urge that the trial court should have directed a verdict for defendants on the theory that the fire commenced as a result of arson. The issues before us fall readily into a logical subdivision. We will consider first the liability of defendants upon their policies of insurance. We will then concern ourselves with the award of damages.

## I.

In their answer to plaintiff's complaint, defendants alleged that plaintiff furnished them with sworn proofs of loss which were false and fraudulent in that these documents set forth under oath that the loss did not originate by any act or design of plaintiff; whereas plaintiff, by its president, knew that the fire was of incendiary origin. The answer further alleged that plaintiff, by its president, had wilfully and maliciously set fire to the premises and caused the loss. Plaintiff denied these allegations in its reply. As shown, the jury decided these issues in favor of plaintiff. The court denied a motion by defendants to direct a verdict in their favor upon the theory of arson and denied defendants' motions for judgment notwithstanding the verdict.

Plaintiff was engaged in the retail furniture business in Chicago. It operated the store here involved at 2234 West 95th Street which sold contemporary furniture; another store farther east on 95th Street for early American furniture and a warehouse at another location.

The evidence concerning the defense of arson shows that Nate Shayne, a salesman who had worked for plaintiff since 1963, testified that he had been at work on the day of the fire, Sunday, March 30, 1969. He stated that he had opened the store located at 2234 West 95th Street, about noon and left around 5:30 P.M. in the company of Harold Pekoe, president and principal shareholder in plaintiff, and two customers. However, in a statement taken by plaintiff's investigator, Shayne had stated that he had left the store close to 6 P.M.

Harold Pekoe was in Hot Springs during the week prior to the fire. He returned to the store on that day at 2 o'clock or 3 o'clock in the afternoon. Everything looked normal. No flammables were evident. He left around 5:30 or from 5 to 5:30, together with Nate Shayne and two customers. In describing these customers, Shayne had referred to certain store invoices. Only Pekoe and Nate Shayne had keys to the store and the front and back doors were both securely locked when they left. Pekoe further testified that he was called to the store on the evening of the fire and arrived there about 9 P.M. The fire had not yet been put out. He hired public adjusters to handle his insurance claim. The proofs of loss were prepared in plaintiff's behalf by plaintiff's auditor and by the auditor for the adjuster.

The two customers who had been at the store on the date of the fire were subpoenaed by defendants. They testified that they had left the store around 5 P.M. Mrs. George Mayer stated that she and her husband, unaccompanied, had left the store together. The door was locked when they tried to leave. She did not see anyone leave the store behind them, but did not pay attention. Mr. George Mayer testified that the salesman had shut the door behind him and his wife. No one walked out of the store with them.

Plaintiff also called Melanie Irwin. She had been employed by plaintiff as a secretary and saleswoman from 1960 to the time of the fire. She testified that she had gone to work on Sunday, the day of the fire, and that she must have stayed until between 3 o'clock and 5 o'clock that afternoon. However, she also testified that she stayed that day until closing time and she was sure that she left the store with Pekoe and Shayne. She did not notice anything unusual at that time. Shayne had previously testified that no one else was working at the store that day other than Pekoe and himself. Pekoe had previously testified specifically that Melanie Irwin was not at the store that Sunday.

Jim Frickman testified that he was a part-time security guard at a restaurant next to the store. He saw smoke coming out of the building around 6 P.M. He went to the front of the store and saw the fire spreading. He returned to the restaurant to call the fire department and to clear the area of children. He specified the time of this incident as "a minute or two to six o'clock."

David Curtin, a chief in the Chicago Fire Department, testified that the fire alarm came in "around" 6 P.M. or 7 P.M. The fire was not extinguished for 7 hours and 35 minutes. An explosion occurred 10 or 15 minutes after the fire department arrived. The witness did not know the cause of this. The store windows were "all out" by that time.

Frank Klausing, an independent fire investigator retained by defendants, who had considerable experience in the Chicago Fire Department, testified regarding his investigation of the fire. He commenced his work on April 2, 1969. He had wreckers remove the debris from the front of the building because it appeared that the fire had started there. He then tried to reconstruct the fire scene, studying burn patterns and combustibles. The south wall and southeast corner of the front of the building had collapsed. The fire had progressed from the front of the structure, facing south, to the rear. The fire pattern rose dramatically as it moved.

Part of his investigation was a so-called reconstruction of the premises which attempted to place burned members or portions of the structure in an approximation of their original positions. He determined that the point of origin of the fire was at floor level in front of display platforms on each

side of the front of the store. The fire burned under these platforms and rose in height toward the back of the store. One indication that the fire had traveled along the floor was the fact that stuffed chairs and wooden furniture about 8 feet from the point of origin remained intact although they were severely charred.

When the investigator removed the debris, he found spalls in two areas on the floor at the front of the store. A spall is a pit, hollow or chip in the concrete where it has been subjected to a high temperature for a prolonged period of time. The area surrounding the spall may be somewhat raised. The spalls indicated to him that a flammable liquid had been spilled at both locations and had puddled. It was highly improbable that the spalls existed before the fire because they would have made the floor uneven. The area was one over which customers were obliged to walk.

The witness was told that Mr. Pekoe had been having trouble with the gas heaters located near the ceiling of the store. There was great heat at ceiling height during the fire, so that several ceiling joists fell to the floor. However, he was certain that the fire could not have started in the ceiling area. In such a case, the roof would have fallen in before the fire reached the sales area. Further, if the fire began in the space between the ceiling and the roof, there would have been a great deal more smoke and fewer flames due to the lack of oxygen in that area.

Likewise, he testified, the fire could not have been started by a lighted cigarette. First, there would not have been sufficient time for the cigarette to ignite the store between the time the store closed and the fire was reported. Also, if a cigarette had caused the fire, there would have been a great deal of smoke before the smoldering fire erupted into flame. He did not know whether a cigarette had been dropped in the store earlier in the day. Klausing also testified that he had interviewed Mr. Shayne as part of his investigation and that he had been told that Mr. Pekoe left the store in advance of Mr. Shayne on the day of the fire.

Henry Morton, a professional engineer and an expert on fire technology, testified for defendants. He investigates fires and explosions. He visited the premises four or five times after the fire. In his opinion, the fire started due to some sort of flammable liquid on the floor of the store and traveled with little contributory fuel. He found no other source of heat ignition in the area. He inspected the gas system in the building including three large heaters, and concluded that the system was in no way associated with the fire. He could not determine where the electrical outlets had been located on the premises. A fire could possibly be caused by shorts or inadequacies in an electrical system.

The original fire did not start in the furniture. The fire was very hot and traveled quickly across the front of the store premises from west to

east. The burning was very severe in the aisle where there was no furniture. The fire alarm was turned in at 6:08 P.M., about 8 to 10 or 12 minutes after the last person had left the store. This was a very short time for the normal accidental fire to start. There was less smoke here than usual and not the heavy black smoke associated with burning lacquer and synthetics. Therefore, he concluded that the fire had probably started in the front of the store and the merchandise had only smoldered after the roof fell in. It was possible that someone had poured the flammable liquid on the floor and left the store before the fire ignited. The technique involved in a delayed fire is not very sophisticated and could be easily managed, with a simple mixture of readily obtainable chemicals, by one who is not an expert in fire technology.

He also testified that he found spalls or chips in the concrete floor, some approximately one-half inch to three-eighths of an inch deep at their centers. If water is poured into a spall and the surrounding concrete turns pink, the spall occurred due to the presence of intense heat rather than being formed when the concrete was poured. He performed the water test in the Werner store and the concrete turned pink. He did not report that test to defendants or to their attorneys. One of these attorneys was present when he performed the test and thus knew about it.

Harold Pekoe testified that he had no background, education or experience in the use of combustion and combustion equipment. He had no knowledge of any substance that could be placed upon a surface and would ignite some time thereafter. He denied that he had placed any combustible substance upon the floor of the store. He had no knowledge of any other person having done so. He testified that no one remained upon the store premises when he left.

Harold Pekoe also testified that plaintiff company was in solid financial condition at the time of the fire with current accounts payable. Plaintiff had failed to pay its rent for two months but it had withheld these payments because the sewers had been backing up. Plaintiff had purchased the business at this location less than one year prior to the fire. The figures compiled by plaintiff's auditor showed that the entire operation of the store from date of acquisition to the time of the fire had resulted in a loss of shortly under $6000.

During that same period of time the second store operated by plaintiff for handling contemporary furniture, also located on 95th Street, in Chicago, made a profit of $13,800. The accounting evidence also showed that during its operating period ending in December, 1968, the store in which the fire occurred had accounted for 63.9 percent of the total sales made in both locations and 60.6 percent of the merchandise purchased. During this same period, the second store operated by plaintiff reflected

36.1 percent of the total sales and 39.4 percent of total purchases. However, during its operations in 1969, prior to the fire, 75.9 percent of the purchases were allocated to the store here involved although its sales declined to 40.6 percent of the total combined sales. As regards the second store operated by plaintiff, the percentage of sales increased to 59.4 percent while the purchases allocated to that store decreased sharply to 24.1 percent. Testimony by plaintiff's auditor also showed that the combined operations of plaintiff's stores showed sales tax paid of approximately 1.7 percent of total sales.

The above evidence must be considered as regards the affirmative defense of arson. Our analysis must be governed by the decision of the Supreme Court in *Sundquist v. Hardware Mutual Insurance Co.* (1939), 371 Ill. 360, 21 N.E.2d 297. There, the court abandoned the former rule applicable in civil cases that where commission of a felony is alleged it must be proved beyond reasonable doubt. The court expressly overruled *Rost v. Noble & Co.* (1925), 316 Ill. 357, 147 N.E. 258, and established the principle that in civil cases, even where commission of a felony or another crime is involved, "no more is required than that the cause of action or defense be proved by a preponderance or greater weight of the evidence." 371 Ill. 360, 365.

The defense of arson here consisted of two elements; the incendiary nature of the fire and proper proof that plaintiff corporation caused or procured it. In our opinion, the evidence here shows by a strong and convincing preponderance that the fire was incendiary. This appears from the testimony of two qualified experts called by defendants and from the physical evidence of the existence of the spalls described by both experts and confirmed by photographs. This cogent evidence stands uncontradicted.

However, we cannot say that the evidence is equally strong as regards establishment of a connection between plaintiff and the fire. This evidence is entirely circumstantial and consisted largely of the impeachment by defendants of the testimony of plaintiff's agents Pekoe and Shayne. In addition there are circumstances such as the loss resulting from operation of the store and the discrepancy between sales and purchases in comparison with plaintiff's other store, as above described, which tend to supply a motive. It is true that circumstantial evidence is legal evidence and may be used to establish any fact including, in the case before us, the possibility of connection of plaintiff corporation with the fire. *(Truelsen v. Levin* (1974), 24 Ill. App. 3d 733, 735, 321 N.E.2d 528, *leave to appeal denied,* 58 Ill. 2d 595.) But facts should not be deemed established by circumstantial evidence unless the circumstances are so related that these facts are the only conclusion to be drawn. Conjecture,

guess or suspicion standing alone are not sufficient to prove that plaintiff actually caused the fire to be set. See *Fabschitz v. King* (1973), 10 Ill. App. 3d 43, 45, 293 N.E.2d 916.

In this regard, the case before us must be differentiated from *Carpenter v. Union Insurance Society* (4th Cir. 1960), 284 F.2d 155, upon which defendants strongly rely. There, the Court of Appeals affirmed a judgment denying recovery upon policies of fire insurance. However, the facts there, although circumstantial, included many strong factors not present before us such as an increase in the amount of fire insurance; payment of long overdue premiums; suspicious conduct by two agents of the insured who remained in the vicinity of the plant hours after closing and the fact that the fire commenced with a small flame and then erupted with a violent explosion together with the presence of two distinct fires at the scene and a mass of other circumstances which the Court of Appeals deemed sufficient to prove arson by clear and convincing evidence. 284 F.2d 155, 160, 161.

■■ In the case before us, we are dealing with the verdict of the jury reached after hearing all of the evidence and approved by the able trial judge who denied motions for new trial. The result reached was, in our opinion, within the area of permissive determination by the jury. *(Golden v. Big Bear Foods, Inc.* (1968), 102 Ill. App. 2d 237, 246, 243 N.E.2d 730, *leave to appeal denied,* 40 Ill. 2d 579.) Although the evidence of the incendiary nature of the blaze is strong, it cannot be said, in our opinion, that all reasonable men would agree that the verdict of the jury is contrary to the manifest weight of the evidence as regards the element of connecting plaintiff corporation with the fire. We may not set aside the verdict because we ourselves might believe a different conclusion would be more reasonable; but only where the verdict is contrary to the manifest weight of the evidence. *(Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 260, 222 N.E.2d 492.) We cannot say that the evidence here, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand. *(Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Consequently, we conclude that the trial court properly denied the motions of defendants for directed verdict and for judgment notwithstanding the verdict.

Conversely we also approve the order of the trial judge which denied the motion of plaintiff for directed verdict in its favor on the issue of liability. It follows that we need not consider the contention of plaintiff with reference to the refusal of the trial judge to give the jury an instruction regarding the presumption of the honesty of all men and the need to prove fraud by clear and convincing evidence. Since the jury

arrived at a verdict in favor of plaintiff on the liability, discussion of this instruction would be futile.

## II.

The claim of plaintiff on the various policies of insurance issued by defendants is divided into three elements: destruction of contents of the store, business interruption and destruction of outside signs. The sworn proofs of loss filed by plaintiff claimed $49,950 for the contents; $9229.73 for business interruption and $3800 for the signs. The jury returned a verdict for $9990 regarding contents, nothing for business interruption and $1026 for the exterior signs; a total of $11,016.

On the issue of damages, Harold Pekoe testified that inventories were taken every six months. Merchandise was listed at retail prices on the inventory sheets. He had purchased Werner's Furniture in May 1968, for approximately $76,000. His accountant set up the bookkeeping system for him. Separate records were kept for each of his two furniture stores. Nate Shayne, salesman for plaintiff, also testified that an inventory of merchandise in the store was taken during the first week of January 1969. He did not recall if the inventory listed the items at cost or at retail price. The cost of the merchandise to the store was 50 percent of the retail price.

Earl Kaufman testified that he was a certified public accountant retained by plaintiff. He could not certify plaintiff's records although he was obliged to depend upon them in his testimony. He prepared an uncertified financial statement for plaintiff as of March 31, 1969, reflecting the preceding 11 months. He used plaintiff's sales journal as his basic source of information. It showed an inventory figure of $52,432.55 as of March 31, 1969. He found that there was some duplication of numbered invoices reflecting sales. In preparing the financial statement, all invoice numbers had to be accounted for. Sales at the store here involved had declined since June 1968. The witness admitted that all sales made were not recorded in the sales journal. The witness therefore compared the entries in the sales journal with the actual invoices of sales. He found and testified to a number of discrepancies. For example, the journal reflected 14 sales for February 1969. The invoices showed 22 sales. Thus, he noticed that some sales actually made were not recorded in the journal. He had been informed by the client that the arrearages in sales tax, which admittedly existed, would be paid at a later date. The store had no journal for accounts payable. The check disbursement journal had been destroyed in the fire.

It was possible to tell what merchandise had been ordered for this particular store because each of plaintiff's stores was supplied by different

manufacturers. The January 1969 inventory indicated that some $52,000 worth of merchandise was in the store in question, but some of the goods, not exceeding value of $10,000, might have been in the warehouse when the fire occurred.

Plaintiff's trade accounts were current at that time. On redirect examination, Mr. Kaufman testified that duplications in invoice numbers might have resulted from items having been purchased on a layaway plan. He also explained that it is often customary to take inventory at an odd time, as on a weekend, and then to adjust the figures to the end of the inventory period. The witness testified specifically that he did not make any computation as to the actual amount of the fire loss so that the inventory figure reflected in his statement did not represent the amount of the fire loss. He conceded that his testimony was based upon the information supplied by plaintiff's books.

Lawrence Warner, a public insurance adjuster employed by plaintiff, testified that he had a background in appraising damages. He handled 150 to 200 claims per year and dealt with matters such as damage and loss of contents and business interruption. He was representing plaintiff on a contingent basis of 7 percent of the amount of recovery. His figures as to plaintiff's loss included office equipment, furniture and fixtures and loss of stock. With regard to the noninventory items, he had considered the cash value of each item at the time of the loss. He estimated the loss of equipment and fixtures at $4660. The inventory loss was ascertained by working with plaintiff's auditor. The method used was the book method or gross profit method. The value of lost merchandise was ascertained by use of the inventory taken in January 1969, with adjustments made for later sales, for accounts payable, gross salaries, cost of merchandise and cost of shipping merchandise. As a result, he computed the inventory loss at $52,432.55.

The witness also defined the elements of business interruption insurance coverage. He had prepared information regarding the plaintiff's claim for interruption of business of the time required to return the store to operating condition. He estimated that at least 8 months would be required to rebuild the premises and obtain merchandise so that the store could reopen. He felt that this estimate was conservative and that he would have been within reason to raise his estimate to 11 months before plaintiff could resume operation. Included in the business interruption claim was a claim for gross earnings for the period during which the business could not operate. In this instance, it was impossible to predict future trends because the store had been in operation for only 11 months. Therefore, he had to base his estimate upon figures for the previous year. Based on the information available to him, he estimated a loss of $11,075.67 for business interruption for 8 months.

Because the fire had so completely destroyed the premises, the book method of calculation of loss was the only method by which an inventory at the time of the fire could be taken. The adjuster testified that he received all of the figures from plaintiff and plaintiff's accountant. Any inventory which was not recorded in the store's books or records could not be accounted for. He did not personally audit the store's books but made up his figures in reliance upon these records.

Louis St. John, an insurance adjuster, made a preliminary examination of the loss. His opinion was set forth in a report made to enable the insurers to set up reserves covering the loss. He estimated that between 4 and 5 months would be required to repair and restore the damaged property although only 2 months would be required for the actual construction work. In his report, he estimated the business interruption loss at about $30,000; the contents loss (merchandise) about $55,000 and the estimated value of signs destroyed by the fire was $3800.

The final witness was Robert Bauschelt, a certified accountant retained by defendants. He testified that two groups of invoices were recorded twice. He found other instances of inaccuracies in plaintiff's records. He further testified that some suppliers which had previously sold early American furniture to plaintiff's other store in 1968 were recorded as suppliers to the store at 2234 West 95th, in January of 1969. He testified to the relationship between plaintiff's two stores regarding percentages of purchases and sales as above set forth. He had determined that the changes in allocation of purchases resulted in an overstatement of the inventory at the store here involved in the amount of $15,280.85. In his opinion, a more accurate figure of inventory loss, as reflected by plaintiff's own records, would be $37,000 or $38,000. The duplication of invoices would act to increase the gross profit margin and therefore the amount of the loss. He found that plaintiff's books and records were inaccurate and in an unusually bad condition and therefore he could not verify plaintiff's claims. The witness found an inaccuracy of some $12,600 in the initial inventory made when plaintiff commenced the business in May 1968. He also found some 2800 sales which were not reflected in plaintiff's books.

Concerning damage to the signs on the exterior of the store, the proof of loss claimed $3800. Plaintiff's books and records showed a valuation of $4000 as covering all of the signs in every location. There is testimony by Robert Bauschelt, the certified accountant employed by defendants, that there was no breakdown or segregation by which any specific amount could be ascribed to the signs on the store here involved. He also testified that the books and records did not contain any indication of depreciation in connection with the valuation of these signs. The jury returned a verdict of $1026 covering destruction of the signs.

Analysis of this evidence must commence with statement of the

principle that plaintiff has the burden of proving its damages by a preponderance of the evidence. In virtually every type of case involving proof of damages, whether based upon negligence or upon the provisions of a policy, the assessment of damages claimed by plaintiff is primarily a question of fact within the discretion of the jury. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 452, 158 N.E.2d 63, *cert. denied,* 361 U.S. 127.) This court should not and may not substitute its judgment for that of the jury concerning the amount of damages to be awarded in any case. (*Doerge v. Wabash R.R. Co.* (1972), 4 Ill. App. 3d 914, 917, 282 N.E.2d 226, *leave to appeal denied,* 52 Ill. 2d 594, and additional authorities there cited.) In *Doerge,* this court affirmed a verdict in a suit for personal injuries based upon Federal law. The evidence included ascertainable items such as $68,645 for lost wages and other items such as future lost wages and loss of services of the husband in the home but the verdict was for $30,000.

■■ It has been held repeatedly that the ascertainment and assessment of damages is a question of fact which is peculiarly within the province of the jury and, where there is no issue raised concerning the instructions on damages and no showing that the size of the verdict was the result of passion or prejudice or a patent disregard of any element of damages, the determination by the jury will be affirmed. *Maguire v. Waukegan Park Dist.* (1972), 4 Ill. App. 3d 800, 804, 282 N.E.2d 6, *leave to appeal denied,* 52 Ill. 2d 594.

■■ In the case at bar, it seems to us that the jury had good reason to deny recovery for business interruption. It could not be successfully maintained that all reasonable minds would agree that plaintiff is entitled to recovery on this score. Plaintiff's adjuster, Lawrence Warner, defined the elements of business interruption to the jury in a rather technical manner. Mr. Warner conceded that he was obliged to base his estimate upon figures for a previous year because of the short time this store had been in operation. In our opinion, the showing of the existence of a loss by plaintiff's business for the entire period during which it operated justified the jury in rejecting the claim of recovery for business interruption. It was also within the province of the jury to believe the testimony that only 2 months would be sufficient for the actual construction work required to restore the property to operating condition.

■■ Similarly, as regards the amount allowed by the jury for damage to the signs, the figure of $1026 was within reasonable limits. The claim in plaintiff's proof of loss was $3800 and the books and records of plaintiff showed a total value of $4000 for signs in all locations. Therefore, there is some relationship between these figures and the amount reached by the jury. Also, there was no evidence as to the rate or extent of depreciation of

the signs on the store in question or of the reasonable value of the destroyed signs at the time and place of their destruction. *New York, Chicago & St. Louis R.R. v. American Transit Lines* (1951), 408 Ill. 336, 339, 97 N.E.2d 264.

As regards the verdict of $9990 for damage and loss to the contents of the store, we must remember that all of the figures placed before the jury were dependent upon the books and records maintained by the plaintiff. The evidence is replete with examples of the inaccuracy and insufficiency of these books and records. Plaintiff's own certified auditor testified flatly that he could not certify the statement that he had prepared for plaintiff. He conceded the existence of numerous errors and deficiencies in the books. In addition, the certified auditor who testified in behalf of defendants also pointed out many discrepancies and other deficiencies in the records maintained by plaintiff. Yet, these unreliable records were the exclusive source of information for all those who testified on this subject.

■■ Perhaps most important of all, the evidence, as above reviewed, shows that Harold Pekoe and Nate Shayne were completely discredited before the jury. Both of them were impeached in connection with the time that they left the store on the evening of the fire. Shayne was discredited by the testimony he gave plaintiff's investigator shortly after the incident. Both witnesses were contradicted by the testimony of the two impartial customers who denied that they had left the premises with Pekoe and Shayne. In addition, both of these witnesses were discredited by Melanie Irwin, another employee of plaintiff who testified in a manner directly opposed to their previous statements. This served further to undermine the confidence of the jury in records prepared and kept by these persons or under their supervision. Under circumstances of this type, it is difficult to urge that the jury showed passion or prejudice against plaintiff. On the contrary, in view of the strength of the evidence regarding the incendiary nature of the blaze and the circumstantial evidence of motive and other factors it may well be urged that the jury was sympathetic to plaintiff. The fact that no witness testified directly to the figures in the verdict does not itself show that the verdict was an unjustified compromise on the damages. (See *Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 851, 342 N.E.2d 758, citing *Comm v. Goodman* (1972), 6 Ill. App. 3d 847, 286 N.E.2d 758.) It follows from this analysis that the judgment appealed from should be affirmed as alternatively urged by defendants.

It remains to consider the single contention advanced by plaintiff that the damages allowed are inadequate so that plaintiff should be awarded a new trial on the issue of damages only. Plaintiff's brief in this court limits

its request for relief to the allowance of a new trial solely on the question of damages. (See Supreme Court Rule 341(e)(8), Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(8).) In our opinion, our disposition of this final contention is mandated by two recent decisions of this court as well as by the various authorities which they cite.

In *Gainer v. Bates* (1973), 14 Ill. App. 3d 297, 302 N.E.2d 463, plaintiff obtained a verdict of $2500 for personal injuries resulting from an intersection collision. The verdict was less than the special damages proved. The trial court granted a new trial on the issue of damages only. This court reversed. As in the case before us, this court pointed out that the evidence on the issue of contributory negligence and negligence preponderated against plaintiff so that the award of damages suggested that the jurors were sympathetic rather than antagonistic to plaintiff. (14 Ill. App. 3d 297, 300.) This court stated the applicable principles as follows (14 Ill. App. 3d 297, 299-300):

> "It is otherwise, however, if the verdict is a compromise between a plaintiff's damages and his own negligence. It would be unfair to permit a new trial on the question of damages alone and force a defendant to trial with the issue of negligence foreclosed to him when the verdict against him on that issue was unjustified. A new trial may be granted for damages alone only where 'the damage issue is so separable and distinct from the issue of liability that a trial of it alone may be had without injustice.' *(Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275.) A court may order a new trial as to damages where the evidence of liability is so clear that there is no real issue on this point for a second jury to try. *(Brunner v. Slupe* (1972), 8 Ill. App. 3d 924, 290 N.E.2d 327.) It may not order a new trial on damages alone where it appears that the damages awarded by the jury were a compromise on the issue of negligence. *Paul Harris Furniture Co. v. Morse; King v. City of Chicago* (1964), 53 Ill. App. 2d 484, 202 N.E.2d 839."

In *Joseph v. Luke* (1975), 25 Ill. App. 3d 582, 323 N.E.2d 631, in a situation parallel to *Gainer*, plaintiff, a minor, was struck by an automobile in the middle of a block with disputed evidence as to whether he had darted out between parked cars. The verdict was less than the proved special damages. The court granted a new trial on the issue of damages only and this court reversed, citing and quoting from the opinion in *Gainer*. This court used the following language (25 Ill. App. 3d 582, 585):

> "In the instant case, there can be no dispute that the jury's award was not in accord with the proof of damages. However, the

evidence presented at trial leads to the conclusion that the jury's award was the result of a compromise between plaintiff's injuries and his conduct at the time of the accident, and not because the jury failed to consider the proper elements of damage."

In the case before us there is no issue of failure of the jury to consider the proper elements of damages. As shown, there is no issue of bias or prejudice on the part of the jurors against plaintiff. Considering our analysis of the evidence as above detailed, the result follows inevitably that this verdict was a result of a compromise between the damage suffered by plaintiff and the clouded issue of liability on the policies. To grant plaintiff's prayer and require a new trial on the issue of damages only would be most unjust. In our opinion, the trial judge acted with complete propriety when he denied plaintiff's motion for new trial on the issue of damages only.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

BURKE and O'CONNOR, JJ., concur.