ARNOLD N. MAY BUILDERS, INC., Plaintiff and Counterdefendant-Appellant, v. NICK S. BRUKETTA, Defendant and Counterplaintiff-Appellee.

Third District    No. 80-619

Opinion filed September 30, 1981.

Charles E. Covey, of Barash, Stoerzbach & Henson, of Galesburg, for appellant.

Kent F. Slater, of Lucie, Heiser & Slater, of Macomb, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Counterdefendant Arnold N. May Builders, Inc. (hereinafter May Builders) appeals from the judgment entered in favor of counterplaintiff Nick S. Bruketta, in Bruketta's counterclaim in negligence against May Builders. The jury returned a verdict for Bruketta in the amount of $38,641.68. The original action was filed by May Builders, and in it they sought recovery against Bruketta, on a contract with him for their construction of a cattle confinement building. Bruketta then counterclaimed against May Builders arguing he was entitled to a credit as against any amount due under the contract, based upon labor supplied by him, and also asserting a claim for damages to his cattle as a result of May Builders' negligence in failing to complete the confinement building in time for the winter of 1972-1973.

In the first action, the jury returned a verdict granting Bruketta a $4,575.61 credit for his labor, and it also assessed damages to him, as a result of May Builders' negligence, in the amount of $19,907.90. May Builders appealed the latter damage award (*Arnold N. May Builders, Inc. v. Bruketta* (1978), 60 Ill. App. 3d 926, 377 N.E.2d 579), and we reversed that jury award, finding that opinion evidence on the ultimate issue was improperly admitted on the question of causation. (60 Ill. App. 3d 926, 933.) We remanded for a new trial on Bruketta's claim for damages to his cattle from May Builders' negligence.

The cause was then retried before a jury and the jury returned a verdict in favor of Bruketta in the amount of $38,641.68. May Builders appeals that verdict and judgment, and it argues (1) that Bruketta was guilty of contributory negligence as a matter of law; (2) that no causal connection was established between the acts of May Builders and the injury suffered by Bruketta; and (3) that the damages awarded were speculative, conjectural and argumentative. It seeks entry of a judgment *n.o.v.* on the first two issues, or alternatively, a new trial on the issue of damages.

The record discloses the following pertinent facts. The contract between May Builders and Bruketta was entered into in May 1972, and it called for the construction of a cattle confinement building on Bruketta's farm in Fulton County. As part of the contract, Bruketta agreed to construct the foundation for the building and to install the slats, or flooring, over the confinement pit. While the foundation for the building was completed by Bruketta in early September, there was a problem in

obtaining the slats. Carl Johnson, an agent for May Builders, informed Bruketta in early October that his company and the supplier of the slats were engaged in a dispute which prevented them from getting delivery of the slats for Bruketta's building. Bruketta then arranged for direct delivery and payment between himself and the supplier. The slats arrived in October and were in place by the first part of November 1972.

Although May Builders had told Bruketta that the building would be completed before the winter, Bruketta, at this time, was worried about the approaching winter. He told Carl Johnson about this time that he wanted to purchase his feeder cattle for the coming year. Johnson told him to "go ahead and buy them." Johnson further told him that he need not take his normal steps to winterize the feed lot, as he had in the past, since the confinement building would be ready before winter to house the cattle.

In years past, Bruketta had hauled in large quantities of corn cobs for the open feed lot, the purpose of which was to prevent the cattle from bogging down and suffering exposure in the open lot during the bad winter months. Relying upon Johnson's representations, Bruketta purchased 322 head of cattle around the first of November, putting them in the open lot without benefit of corn cob mounds. Representations had been made to Bruketta that the building would be completed four to five weeks after the start of construction. Work on the confinement building, by a subcontractor of May Builders, began in November. However, when mid-December arrived, the building was still incomplete, and unsatisfactory progress was being made by May Builders' subcontractor. Work continued to progress slowly through December and January. In the first week of February 1973, the subcontractor in charge of the construction was dismissed by May Builders and their own crew took over the job. The cattle confinement building was finally completed around the first of April 1973.

During the entire period of construction, that is, during the winter months of '72-'73, Bruketta's cattle remained in the open, exposed feed lot, without benefit of the cob mound or other protection. Bruketta's claim for damages was premised upon the death rate among his herd over the winter and on the reduced rate of weight gain by the surviving herd. Both of these factors were alleged by Bruketta to have been caused by failure to winterize the feed lot, which failure resulted from his reliance upon the representations of May Builders. Bruketta claimed damages for the cost of feeding the cattle an additional 123 days, which was required to bring them up to normal selling weight. Bruketta placed his additional costs at $38,641.68, and the jury returned a verdict in his favor for that amount. Additional facts will be set forth as necessary within our treatment of the issues on appeal.

■■ The first issue raised by May Builders is whether the evidence established Bruketta's contributory negligence as a matter of law. May Builders argues that Bruketta knew the building was behind schedule when he purchased the cattle, and that when it became evident to him that it was not going to be completed before winter, he nevertheless made no effort to winterize the open lot so as to protect his cattle. The applicable standard on this issue was stated by us in *Atchley v. Berlen* (1980), 87 Ill. App. 3d 61, 64-65, 408 N.E.2d 1177, quoting from *Swenson v. City of Rockford* (1956), 9 Ill. 2d 122, 127-28:

> " 'To be guilty of contributory negligence as a matter of law it must appear that all reasonable minds would agree that assuming the facts as presented by the plaintiff and all reasonable inferences that may be drawn therefrom in her favor, plaintiff is nevertheless guilty of contributory negligence. [Citations.]
>
> Whether a plaintiff is guilty of contributory negligence is ordinarily * * * a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence.' "

In examining the evidence in this case we do not find that it was so clearly insufficient so as to take the question away from the jury.

■■ The evidence in the record, viewed, as it must be, most favorably to Bruketta, indicates that he relied upon the representations of May Builders' agents in purchasing the cattle in early November. There is no dispute that he was informed the building would be done by winter and that he need not winterize his open feed lot. Based upon these representations, one from a man found reliable in the past, Carl Johnson, Bruketta reasonably proceeded without taking precautions to provide winterizing material for the feed lot. Once the winter had begun in earnest, and the work on the building still lagged behind, there was little Bruketta could do to adequately provide the necessary protection, according to his own testimony. Bruketta testified that the necessary amount of corn cobs (100 to 150 truck loads) was unavailable to him after November, as the corn processors from whom he bought, sold them around that time. Two of defendant's witnesses testified that in an open feed lot situation, corncobs, dirt or rock can be used to build up a feed lot. Yet, Bruketta's testimony was that rock was not a feasible alternative for him, and neither was dirt or pasturing at that time. The reasonableness of these allegedly alternative methods was a question for the jury to assess. Questions of credibility and the weight of the evidence are for the jury to decide. (*McCommons v. Moorman Manufacturing* (1980), 81 Ill. App. 3d 708, 401 N.E.2d 1354.) May argues that this is a case where Bruketta was presented with two alternative ways of proceeding, one dangerous and the other safe, and that he consciously chose the dangerous route of not doing anything to

protect his herd, in the face of the winter conditions in the open feed lot. However, in the instant case, we conclude that the evidence, viewed most favorably to Bruketta, does not establish that he had available to him the alternatives posited, under all the circumstances. Nor can we discern a basis for finding contributory negligence as a matter of law in the manner in which Bruketta finished putting the slats in place. The slats were in place as of November 1972, which gave May Builders enough time, by their own reckoning, to finish the building before the winter. The issue of contributory negligence properly went to the jury.

The next issue raised is whether the evidence supported a conclusion that the injury to Bruketta's cattle was causally connected to May Builders' negligence. May Builders argues that no sufficient causal connection was established. The evidence, with reasonable inferences therefrom in favor of Bruketta, indicated that the cattle he purchased in November 1972 were similar to those he had purchased in previous years. They were purchased at the same weight and from the same source as his cattle purchased in previous years. They were of similar breed, quality, and type as those purchased in the prior nine years. They were kept in the same feed lot facilities, and the management techniques employed were the same as in prior years. The feed ration was the same, and testimony indicated that for the severe winter months weather conditions did not significantly differ from the norm. The principal difference, according to Bruketta, was that during the winter of '72-'73 his open feed lot was not winterized with corn cob mounds, as it was in the past. This lack of winterization, as noted, was the result of the representations made by May Builders to him concerning the completion of the confinement building and the need for other protection in the open lot. Bruketta further testified that while in prior years his cattle gained an average of 2.25 to 2.5 pounds per day, in '72-'73 they gained only 1.53 pounds per day. The death rate for '72-'73 was 14 head, while the normal annual death loss was one or two. An animal nutritionist, testifying for Bruketta, stated that the effective temperature of feeder cattle in an open lot is controlled by mounding of dirt or cobs to afford the cattle a place to lay in wintertime, to keep them out of the mud. The cobs provide insulation when the cattle lie down and also protection from the wind and a gathering place for the herd. He further stated that without such protection from mounds, the animals are subjected to much greater and more severe exposure to the cold. If required to stand in the mud and water, their feed efficiency is reduced, and thermal stress results. Stress from the cold and wet conditions requires the cattle to use more energy in order to maintain internal temperatures. The obvious inference from the nutritionist's testimony is that exposure to the winter in an unwinterized feed lot results in reduced feed efficiency which results in an impeded and

reduced rate of weight gain. When energy from the feed is being used to maintain body temperature, in the face of severe cold, it is not available for weight gain to the same extent as if the animal were protected from the severe winter. Plaintiff's evidence, and reasonable inferences therefrom, is sufficient to support the jury's conclusion that the reduced rate of weight gain encountered by Bruketta's cattle during that winter was caused by the failure to winterize the feed lot, as had been done in previous years by him.

■■ While May Builders is correct in stating that its testimony indicated that many factors may affect rate of weight gain, including weather conditions, feed rations, and type of cattle, the evidence in the instant case indicates that those other factors, for the most part, were substantially similar to conditions as existed in previous years wherein a more average rate of weight gain was achieved. The primary difference in '72-'73, and one shown to have a direct effect on rate of gain, was the lack of winterization in the feed lot. The jury had before it the evidence, contradictory as it was, and it made a determination based upon that evidence. We find the issue of causation was properly submitted to the jury and that the evidence in the record supports its conclusion on that issue.

The final issue raised by May Builders is whether the damage award by the jury was purely speculative, conjectural and argumentative. The evidence, as indicated previously, showed that while in previous years Bruketta's cattle gained at the rate of 2.25 to 2.5 pounds per day, in '72-'73, under the adverse conditions in the unwinterized feed lot, they gained at the rate of only 1.53 pounds per day. While there was some contradiction in the evidence on a normal weight gain, Bruketta's figures found ample support in the testimony. Bruketta's basis for computation for the damages was the extra costs of feeding the cattle in August, September, and October of 1973, in order to bring them up to salable weight. It was his contention that he had to feed 308 head of cattle an extra 123 days in order to ready them for market. The daily cost of feed was set at $1.02 per head. The costs of feed was stipulated to by defendant at trial. However, there was considerable contradictory testimony concerning the proper feed ration, both as to amount and mixture. We need not enter into an examination of that testimony, except to note that it was contradictory and that such matters are for resolution by the jury. The evidence presented by Bruketta was sufficient to show a substantial departure from rate of weight gain in prior years and from normal rate of weight gain for feed cattle.

■■■ As stated in *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 147-48, 281 N.E.2d 323:

" 'It is perhaps true that absolute certainty as to the amount of loss

or damage in such cases is unattainable, but that is not required to justify a recovery. All the law requires is that it be approximated by competent proof. That proof of the exact amount of loss is impossible will not justify refusing compensation.' "

It is well established that the ascertainment and assessment of damages is a question of fact peculiarly within the province of the jury. (*Werner's Furniture, Inc. v. Commercial Union Insurance Co*. (1976), 39 Ill. App. 3d 59, 70, 349 N.E.2d 616.) In the instant case the jury determined that Bruketta's cattle did not sustain normal weight gain during the winter months due to the lack of proper winterization of the open feed lot. The evidence before the jury indicated that as a result of the lack of normal weight gain during the winter, Bruketta was forced to feed the cattle an extra 123 days in order to bring them to market weight. Bruketta indicated the amount of extra feed he fed them during that time and also the costs for that feed. We find that such evidence provided an adequate and competent basis upon which to make an award of damages.

■■ At trial the thrust of defendant's objections and argument on the damage question focused upon the reasonableness of the rations, their amounts and mixture. No issue or argument was presented to the jury that the damages should be based upon a comparison between rations at the end of the growing cycle versus rations at the beginning or in the middle of the growing cycle. Neither was objection made to Bruketta's basing his figures on feeding rations at the end of the feeding cycle. Having failed to make such objection, or otherwise raise the issue before the jury in the trial court, May Builders may not now, for the first time on appeal, bring forth the issue and argument. (*In re Estate of Kime* (1976), 42 Ill. App. 3d 505, 356 N.E.2d 350.) It is an elementary principle of appellate review that issues, contentions and arguments not presented to the court below will not be heard for the first time on appeal. There have been two trials already in this cause and counsel for defendant had ample time in which to prepare their case. Arguments and contentions as to the proper measure of damages should have been brought forth below, in order to preserve them for appeal. As to the question of mitigation, the jury was properly instructed on the question and found that May Builders had not proven Bruketta's failure to mitigate under the circumstances. This question is directly related to the question of contributory negligence and the evidence in the record supports the jury's conclusions on both questions. We find no basis to conclude that, as a matter of law, Bruketta failed to mitigate his damages.

The judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.